IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
CA No.: 5:25-cv-00203

ANGEL QUEVEDO HERNANDEZ, on behalf of himself and all others similarly situated,

        *Plaintiff*,

        v.

OPW FUELING COMPONENTS LLC,

        *Defendant*.

)
)
)
)
)
)
)
)
)
)
)
)
)

**COLLECTIVE/CLASS ACTION
COMPLAINT**

COMES NOW, Angel Quevedo Hernandez ("Plaintiff" or "Plaintiff Quevedo Hernandez"), on behalf of himself and all others similarly situated, (collectively "Plaintiffs") by and through undersigned counsel, and hereby sets forth this collective action for violation of the Fair Labor Standards Act under § 216(b), and a representative action under the North Carolina Wage and Hour Act pursuant to Fed. R. Civ. P. 23, and alleges and follows:

## PRELIMINARY STATEMENT

1.      Named Plaintiff, on behalf of himself and all others similarly situated, brings this action against Defendant OPW Fueling Components LLC ("Defendant OPW" or "OPW") under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*. and the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-25.1 *et. seq*., for not fully compensating employees who have or have worked at Defendant OPW.

2.      Plaintiffs consist of current and former employees working in the

manufacturing and operations departments for Defendant OPW.

3.      Despite notifying Plaintiffs of their non-exempt hourly status, overtime eligibility, promised straight or regular hourly rates, promised bonuses, and a promise to pay employees for all "Working Time" (defined by Defendant as any time that is considered "compensable" under federal, state, or local law)   through an employee handbook and earning statements consistent with the NCWHA, Plaintiff and others similarly situated were not always paid for all of their hours worked, including but not limited to hours worked below and in excess of forty (40) hours per week at the appropriate overtime rate and time spent working through meal breaks.

4.      Defendant OPW is aware of Plaintiffs working generally in excess of forty (40) hours per week, as Defendant OPW has suffered or permitted Plaintiffs to work in excess of forty (40) per week on a regular basis without being properly compensated at one-and-a-half (1.5) times the regular rate for hours worked over forty (40) hours per week.

5.      Defendant OPW's practice of failing to compensate Plaintiffs at the appropriate promised straight time and overtime rates violates Plaintiffs' rights under either the FLSA and/or the NCWHA.

6.      Defendant OPW's pay practices and policies are in direct violation of the FLSA. Therefore, Plaintiff, on behalf of himself and all others similarly situated, seeks statutory overtime wages and the appropriate overtime premiums for all overtime work required, suffered, or permitted by Defendant OPW, liquidated damages, and/or other damages as permitted by applicable law, as well as attorneys' fees, costs, and expenses incurred in this action.

7.      Plaintiff brings this action for violation of the FLSA as a collective action, pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), on behalf of the following class:

> All individuals who were, are, or will be employed at Defendant OPW's North Carilina facility on the manufacturing floor in non-managerial positions who were not compensated for all of their hours worked, including, but not limited to, above forty (40) hours per week any time within three years prior to the commencement of this action through the present.

8.      Defendant OPW is liable for its failure to pay Plaintiffs for all work performed at the appropriate overtime rate for hours worked in excess of forty (40) per week.

9.      Plaintiffs who elect to participate in this FLSA collective action seek compensation for all statutory overtime wages, an equal amount of liquidated damages, post-judgment interest, and attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

10.      Plaintiff also brings this action under the NCWHA on his own behalf as a representative of similarly situated current, former, or future manufacturing operations employees employed by Defendant OPW in North Carolina.

11.      Named Plaintiff Quevedo, who is a North Carolina resident and who worked for Defendant OPW in North Carolina, asserts that he and the putative class, who works or worked in North Carolina for Defendant OPW, are entitled to compensation for all work performed for Defendant OPW, whether the workweek totaled greater or fewer than forty (40) hours, compensation at the appropriate regular or promised rate for all hours worked in excess of forty (40) per week, especially during workweeks when bonuses, vacation days, or holidays applied consistent with their handbook but were not included as part of

3

the regular earnings for determining the appropriate premium rate(s), and/or bonuses that were promised but were unpaid, and for an equal amount of liquidated damages, prejudgment interest, and attorneys' fees and costs pursuant to N.C. Gen. Stat. §§ 95-25.13, 95.25.6, 95.22(a), (a1), and (d). These promises are not enforceable under the FLSA, and thus the NCWHA is more stringent and provides greater protections to North Carolinians than the FLSA.

12.     Plaintiff seeks class certification under Rule 23 of the Federal Rules of Civil Procedure for the following class of Defendant's OPW employees in North Carolina:

> Proposed 30 Minute Auto Deduction Class: All individuals who were, are, or will be employed at Defendant OPW's North Carolina facilities on the manufacturing and operations floor in nonmanagerial hourly positions who were subject to interrupted lunch breaks during supposed thirty-minute (30) meal breaks, without a corresponding time entry showing that an unpaid meal was recorded and/or paid as hours worked. (the "Meal Break Deduction Class").

> Proposed Time-Shaving Class 2: All individuals who were, are, or will be employed at Defendant OPW's North Carolina facilities on the manufacturing and operations floor in nonmanagerial hourly positions whose time was recorded and experienced time shaving from their actual recorded hours worked. (the "Time-Shaving Class").

> Proposed Off the Clock ("OTC") Work Class: All individuals who were, are, or will be employed at Defendant OPW's North Carolina facilities on the manufacturing and operations floor in nonmanagerial hourly positions who may have been subjected to Off-the-Clock work at least once prior to the start of their shift, during lunch breaks, or following the end of their shift. (the "Off-The-Clock Class").

> Proposed Holiday and/or PTO Class: All individuals who were, are, or will be employed at Defendant OPW's North Carolina facilities on the manufacturing and operations floor in nonmanagerial hourly positions, subject to non-payment of wages at least once for promised unpaid holidays and/or Paid Time Off ("PTO"). (the "Holiday/PTO Class").

4

Proposed Bonuses Class: All individuals who were, are, or will be employed at Defendant OPW's North Carolina facilities on the manufacturing and operations floor in nonmanagerial hourly positions, subject to non-payment of promised bonuses at least once. (the "Bonuses Class").

13. Accordingly, Plaintiff seeks all available relief for these claims, including but not limited to back pay, front pay, past pecuniary losses, prejudgment interest, attorneys' fees and costs, and all other relief permitted by applicable law.

## PARTIES

14. Defendant OPW Fueling Components LLC ("Defendant OPW") is part of the Dover family, a diversified global manufacturer and solutions provider with annual revenue of nearly $8 billion that delivers innovative equipment, components, consumable supplies, aftermarket parts, software and digital solutions, and support services. Defendant OPW oversees the manufacturing of fuel transfer, containment, and dispensing products and systems for use in retail and commercial applications. *See* https://www.opwglobal.com/.

15. Defendant OPW Fueling Components LLC is organized under Delaware law and has its principal place of business at 9393 Princeton-Glendale Road, Hamilton, Ohio 45011. According to its website, Defendant OPW has existed in some capacity since 1892.

16. At all relevant times, Defendant OPW was an employer within the meaning of the FLSA, 29 U.S.C. § 203(d), the NCWHA, N.C. Gen. Stat. § 95-25.2(5).

17. At all relevant times, Defendant OPW operated as an enterprise within the meaning of 29 U.S.C. § 203(r)(1).

18. Named Plaintiff is an adult citizen and resident of the state of North Carolina,

5

residing in Johnston County, North Carolina. Named Plaintiff worked for Defendant OPW as an Operator, Team Lead, and within the relevant period of time at issue as a Technician whose primary duties included performing quality control, ensuring standards are met, and managing the production line.

19.     The proposed FLSA collective consists of individuals who have worked for Defendant OPW, earned an hourly wage, and were not paid properly and consistently with the FLSA's statutory overtime requirement.

20.     At all relevant times, Plaintiffs were employees engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 206, 207.

21.     At all relevant times, Defendant OPW has had gross operating revenues in excess of $500,000, consistent with 29 U.S.C. § 203(s)(1)(A)(ii).

22.     Plaintiff Quevedo Hernandez brings this action on his own behalf and, pursuant to 29 U.S.C. § 216(b), as a representative of a proposed collective action of similarly situated employees.

## JURISDICTION AND VENUE

23.     This Court has original federal question jurisdiction under 28 U.S.C. § 1331 for the claims brought under the FLSA, 29 U.S.C. § 201, *et seq*.

24.     According to its website, Defendant OPW operates in North Carolina and maintains a business location at 3250 US Highway 70 Business West, Smithfield, NC 27577.

25.     The United States District Court for the Eastern District of North Carolina

6

has personal jurisdiction because Defendant OPW conducts business in Johnston County, North Carolina, which is located within this district.

26.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), inasmuch as Defendant OPW conducted business within the Eastern District of North Carolina, and the substantial part of the events or omissions giving rise to these claims occurred in this District.

27.     The claims for violations of the NCWHA are based upon the statutory law of the State of North Carolina.

28.     This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the pendent state claims under the NCWHA because the state law claims arise out of the same nucleus of operative facts as the FLSA claims.

29.     All of the alleged causes of action can be determined in this judicial proceeding and will provide judicial economy, fairness, and convenience for the parties.

30.     The evidence establishing liability for the causes of action will be similar, and the state law claims will not predominate nor create confusion for a jury.

31.     Upon information and belief, during the period relevant to this action, Defendant OPW was an employer, joint employer, or member of an integrated, common enterprise of Plaintiff such that Defendant OPW, or its agents, held or implemented power to control the work performance of Plaintiff, and Defendant OPW directly received the benefit of Plaintiff's labor.

## COVERAGE

32.     At all times material to this action, Defendant OPW acted, directly or

7

indirectly, in the interest of an employer with respect to Named, opt-in, and putative Plaintiffs.

33. At all times material to this action, Defendant OPW was an employer within the defined scope of the FLSA, 29 U.S.C. § 203(d).

34. At all times material to this action, Named and putative Plaintiffs were employees within the scope of the FLSA, 29 U.S.C. §§ 206 and 207.

35. At all times material to this action, Defendant OPW was an enterprise engaged in commerce or the production of goods for commerce as defined by the FLSA, 29 U.S.C. §§ 203(s), 203(r), through the engagement of its employees in commerce or the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, and the enterprise has an annual gross volume of sales made or business done of not less than $500,000.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

36. Defendant OPW primarily operates in the fluid-handling operations industry, designing and manufacturing loading systems, rail, and transport tank truck equipment, integrated flexible piping and secondary containment pumps, valves, fittings, above- and below-ground storage tank equipment, spill containers, overfill prevention devices, swivels, breakaways, and fueling nozzles for virtually all fuel types, including gasoline, diesel, alternative fuels, LPG, Hydrogen, and CNG. Defendant OPW has more than 2,000 employees with manufacturing operations in North America, Europe, Brazil, China, and India, and sales around the world.

8

37.     As stated, Defendant OPW has more than 2,000 employees at approximately twenty-six (26) locations around the world. One of these locations is in North Carolina, which specializes in above- and below-ground retail fueling.

38.     Defendant OPW employs machine operators, welders, and other manufacturing employees.

39.     Plaintiff Angel Quevedo Hernandez worked for Defendant OPW from approximately October 2011 through September 2024.

40.     Over the course of his employment, Plaintiff Quevedo Hernandez worked for Defendant OPW variously as an Operator, Team Lead, and Technician in the Extrusion Department. Plaintiff transitioned into the role of Technician in approximately 2016 until the end of his employment.

41.     As an Operator, Plaintiff Quevedo Hernandez's duties included, but were not limited to, ensuring the smooth operation of the production line, setting up and starting the line, and overseeing production.

42.     As a Team Lead, Plaintiff was responsible for training employees, setting up the production line, maintaining cleanliness, and disassembling extractor heads.

43.     As a Technician, Plaintiff was responsible for performing quality control, ensuring the station was operating in compliance with standards, and managing the production line.

**Pay:**

44.     On or about November 2022, Plaintiff Quevedo Hernandez earned approximately $24.50 per hour as a Technician.

9

45.     Annual raises would typically be announced in January or February and applied in March or April of each year.

46.     Plaintiff Quevedo Hernandez's final pay rate was approximately $27.60 per hour.

**Work Schedule:**

47.     Plaintiff Quevedo Hernandez worked on a two-week, alternating schedule. On the first week ("Week 1"), Plaintiff was regularly scheduled to work from 6:00 a.m. to 6:00 p.m., Monday through Thursday. On the second week ("Week 2"), Plaintiff was regularly scheduled to work from 6:00 a.m. to 6:00 p.m., Monday through Wednesday. However, approximately ninety-five percent (95%) of the time, Plaintiff Quevedo also worked on Thursdays from 6:00 a.m. to 6:00 p.m., either on a voluntary basis or because Defendant mandated he work the extra day to ensure production goals were met. As such, Plaintiff was regularly scheduled to work forty-eight (48) hours in Week 1 and another forty-eight (48) hours in Week 2 for an approximate total of ninety-six four (96) regularly scheduled hours every two-week pay period.

48.     Approximately two (2) weeks per month, Plaintiff would volunteer to work a weekend shift in addition to his regular schedule ("Voluntary Weekend"). For each Voluntary Weekend, Plaintiff was scheduled to work Friday from either 6:00 a.m. to 2:30 p.m. or 6:00 a.m. to 4:30 p.m. or an average nine (9) hours per day and Saturday from 6:00 a.m. to 12:00 p.m. or an additional six (6) hours per day. As such, for each Voluntary Weekend, he was scheduled to work fourteen (14) hours per week *in addition to* his regular schedule of forty-eight (48) hours per week for an approximate total of sixty-two (62) hours

per week.

49.     Approximately one (1) time per quarter, or four (4) times per year, Plaintiff was *required* to work a weekend shift in addition to his regular schedule to keep up with high production demands ("Mandatory Weekend"). For each Mandatory Weekend, Plaintiff was scheduled to work Friday from either 6:00 a.m. to 2:30 p.m. or 6:00 a.m. to 4:30 p.m. or an average of nine (9) hours on Friday and both Saturday and Sunday from 6:00 a.m. to 6:00 p.m. for an average of twelve (12) hours between both days. As such, for each Mandatory Weekend, Plaintiff was scheduled to work an additional twenty-one hours for a 9 hour or day on Friday and an approximate total of twelve (12) hours for Saturday and Sundays worked *in addition to* his regular forty-eight (48) hours because 95% of the time he worked 12-hour days, Monday through Thursday. Thus, during these workweeks, he worked an average of 69 hours per week.

50.     Defendant OPW's corporate policy required employees working on the manufacturing floor to receive a full, uninterrupted thirty (30) minute unpaid meal break each day.

## NCWHA WAGE-RELATED FACTUAL ALLEGATIONS

51.     According to the NCWHA, "wage" includes bonuses and other amounts promised, including hours up to forty (40) each week, when the employer has a policy or a practice of making such payments. N.C. Gen. Stat. § 95-25.2(16).

52.     Defendant's failure to compensate for all hours worked, including work performed from the time Plaintiffs clocked in through the time Plaintiffs clocked out, work performed during meal breaks, and failure to pay employees all promised, earned, and

11

accrued wages, including nondiscretionary bonuses, has affected all putative Plaintiffs similarly. Additionally, Plaintiff Quevedo Hernandez and others similarly situated were promised premium pay for all hours worked at time-and-one-half consistent with Defendant OPW's own written policies stated in its employee handbook, irrespective of Defendant OPW's statutory overtime obligation pursuant to the FLSA. Such additional promises made through handbooks, earning statements, or other written policies are not recoverable under the FLSA.

**Pre-Shift Work:**

53.     Defendant OPW mandated that employees be ready to begin work at the start of the scheduled shift, requiring certain tasks to be completed before the scheduled start time.

54.     Defendant OPW also prohibited employees from clocking in more than five (5) minutes before the start of their scheduled shifts. Moreover, an employee who clocked in after the scheduled shift start time would receive a ½ disciplinary point.

55.     Before the start of his shift, Plaintiff Quevedo Hernandez typically arrived at 5:45 a.m. to prepare for his scheduled shift start time of 6:00 a.m. First, Plaintiff entered the plant and went straight to the locker room to grab personal protective equipment (PPE) necessary to wear for the department in which he worked, including cut-resistant gloves, heat-resistant gloves, Kevlar sleeves for protection against burns, and safety glasses. Then, Plaintiff went to the restroom to wash his hands and don his PPE. Finally, Plaintiff went to the production floor and clocked-in no sooner than five (5) minutes before his scheduled shift start time.

56.     Plaintiff spent approximately ten (10) minutes performing compensable, pre-shift, off-the-clock work each shift. Because Plaintiff was not permitted to record time any sooner than five (5) minutes before his scheduled start time, none of the time spent preparing for his shift was ever reflected in his pay. As such, Plaintiff was not compensated for approximately 10 minutes of pre-shift compensable activities from Monday through Thursdays for an approximate total of 40 minutes per week, and up to 60 minutes or 1 hour per week when Plaintiff and putative Plaintiffs worked up to 6 days per week.

**Unpaid Meal Breaks:**

57.     Throughout his employment, Plaintiff Quevedo Hernandez was supposed to be able to enjoy a full thirty (30) minute uninterrupted meal break. Typically, Plaintiff's meal break was scheduled to begin at 11:15 a.m. and end at 11:45 a.m. However, Plaintiff was rarely able to take a full uninterrupted 30 minute meal break as he completed various tasks to comply with Defendant OPW's production requirements.

58.     First, after clocking out, Plaintiff would walk to the restroom to wash hazardous and/or toxic materials from his hands and remove his PPE, navigating hallways crowds of people, and trying to find a sink where he would his hands to remove the toxic materials before eating.  These activities could take up to five (5) minutes given the crowds of people in the hallways and restrooms trying to do the same thing. Then, Plaintiff would go to the break room. Following the end of his lunch break, Plaintiff would leave the break room early to give himself time to wash his hands, don his PPE, and then wait to punch back in.  As such, Plaintiff could lose up to another five (5) minutes on the way back for an approximate total of ten (10) minutes per day.  Because Plaintiff and those similarly

situated did not receive a full thirty (30) minute uninterrupted lunch break, Plaintiff should have been paid for his entire lunch break. Thus, Plaintiff and putative Plaintiffs/Rule 23 class members lost anywhere between 1.5 to 3 hours per week due to working lunch breaks.

59. Indeed, failure to clock in again before the thirty (30) minutes allotted for meal breaks would result in a ½ or ¼ disciplinary point and a reprimand by the supervisor.

60. Additionally, Plaintiff was called back early from his meal breaks by supervisors or contacted via call or text to discuss work matters during his meal break. Meal break interruptions occurred approximately one (1) to two (2) times per week and would result in losing approximately five (5) to ten (10) minutes of his meal break per interruption.

61. Moreover, approximately one (1) to two (2) times approximately every week or every two (2) weeks, Plaintiff missed an entire meal break due to staff shortages.

62. Therefore, Plaintiff was not able to enjoy the benefit of the full, uninterrupted thirty (30) minute meal break as required by Defendant OPW's policies for various reasons as described above. Thus, Plaintiff and putative Plaintiffs/Rule 23 class members lost anywhere between 1.5 hours to 3 hours per week due to working lunch breaks.

**Bonuses:**

63. Defendant OPW had several types of bonus programs available to employees during the course of Plaintiff Quevedo Hernandez's employment.

64. To encourage employees to meet production demands, Defendant OPW offered a temporary, nondiscretionary bonus of two-hundred-and-fifty dollars ($250) for employees who worked in excess of sixty-four (64) hours in a week some time in 2022.

14

65. To the best of his recollection, Plaintiff Quevedo Hernandez qualified for this nondiscretionary bonus approximately four (4) times while it was offered. However, Plaintiff only received payment of this bonus three (3) times, despite complaints to his supervisors.

**Estimated Unpaid Wages:**

66. Thus, to the best of Plaintiff's recollection, Plaintiff estimates his unpaid promised wages and bonuses as follows: Plaintiff estimates that he is due unpaid promised straight time for any workweeks when he might have worked less than forty hours per week[1] but was not compensated for all promised compensable hours worked, (i.e., pre-shift) activities for a conservative estimate of 40 minutes or .67 minutes per week and a conservative average of 2 hours per week (for unpaid working lunch breaks) for a total of 2.67 unpaid hours worked per week. For weeks where Plaintiff worked over 40 hours per week, a conservative estimate would be 3.29 unpaid hours worked per week. Thus, Plaintiff is not double-dipping but only claims unpaid promised wages and bonuses for the two (2) years preceding the end of his employment as permissible under the NCWHA, which allows a recovery of eight percent (8%) prejudgment interest, which is not recoverable under the FLSA for earned, accrued, and unpaid promised wages from the date such wages first became due.

---

[1] Such estimated damages are based on Plaintiff Quevedo's best recollection of hours worked, as he cannot recall with precision exact details. *See Anderson v. Mt Clemmens Pottery*, 328 U.S. 680, 687, 690 (1946). However, he will have a better understanding upon a concise review of his clock in/out records along with a comparison of his earning statements.

67.     Thus, $27.69 (Quevedo's Hourly Rate) * 1.5* 3.29 hours per week = $136.65

* 8% for prejudgment interest or $10.93 for each workweek when such earned wages

became due for a total of $147.58 *52 weeks = $7,674.16 *2 for two years under the

NCWHA = **$15,348.32**. Since Plaintiff Quevedo is due an estimated $250.00 for unpaid

promised bonus, in addition to, 8% interest for each workweek since that bonus became

due and remains unpaid for an additional $20.00 per week or $1040 per year or $2040 for

two years such bonus has remained outstanding for an approximate total of $2330.00 in

addition to **$15,348.32** totals **$17,678.32** and doubled for liquidated damages amounts to

**$35,356.64.**

68.     Plaintiff estimates that if there are approximately five hundred (500)

employees[2] who worked the same or similar hours and worked approximately the same

length of time, a putative Rule 23 class would have been shorted, a combined *estimated*

total exceeding **$5 million.**[3] There has been no duplication between damages calculated

under the NCWHA and the FLSA.

## FLSA WAGE-RELATED FACTUAL ALLEGATIONS

**Unpaid Overtime Hours Worked:**

69.     Since the FLSA requires that employers pay their employees time and one

half for hours over 40 per week, and Plaintiff Quevedo and those similarly situated were

---

[2] Defendant's counsel represented this amount in a hearing in related action, *Canales v. OPW Fueling Components LLC* CA No.: 5:22-cv-00459-BO-RJ, Dkt. 193, February 25, 2025 Hearing Transcript, at **18:22-19:14.
[3] Again, without payroll and time records for an entire putative class during the entire relevant time period, such damages are simply based on an estimated extrapolation.

16

not paid conservatively up to 40 minutes per week for pre-shift activities and an average of 2 hours per week due to working lunch breaks, Plaintiff Quevedo is entitled to time and one half for the third preceding year of his employment (the FLSA allows recovery for three (3) years due to willfulness which is not available under the NCWHA). Thus, $27.69 (Quevedo's Hourly Rate) * 1.5* 3.29 hours per week = $136.65 *52 weeks for the *third* preceding year = $7,105.80 (which is only available under the FLSA) * 2 for liquidated damages = **$14,211.60.**

70.     As such, Plaintiff Quevedo Hernandez is due approximately $14,211.60 for just one year or the preceding third year, which is not available under the NCWHA, which is inclusive of liquidated or double damages.   Plaintiff estimates that if there are approximately five hundred (500) employees[4] who worked the same or similar hours and worked approximately the same length of time, a putative collective would have been shorted a combined estimated total exceeding **$5 million**.

## FLSA COLLECTIVE ACTION ALLEGATIONS

71.     Named Plaintiff brings the First Count of the instant Complaint as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of himself and all similarly situated employees.

72.     Similarly situated employees, for purposes of the FLSA collective action claims, include individuals who were, are, or will be employed by Defendant OPW as

---

[4] Defendant's counsel represented this amount in a hearing in related action, *Canales v. OPW Fueling Components LLC* CA No.: 5:22-cv-00459-BO-RJ, Dkt. 193, February 25, 2025 Hearing Transcript, at **18:22-19:14.

17

manufacturing employees at any time within the three (3) year period prior to the date of the commencement of this action through the present and who did not receive compensation for all hours worked.

73.     The members of the proposed collective action, like Named Plaintiff, are employed as manufacturing employees with substantially similar job requirements and pay provisions and subject to the same common practices, policies, or plans that fail to compensate them for all work performed at the appropriate rate.

74.     Upon information and belief, there are hundreds of putative Plaintiffs and similarly situated current and former manufacturing employees within the scope of the aforementioned FLSA collective.

75.     The members of the proposed collective are known to Defendant OPW, readily identifiable, and may be located through Defendant OPW's employee records.

76.     Pursuit of this action collectively will provide the most efficient mechanism for adjudicating the claims of Named and putative Plaintiffs.

77.     Members of the proposed FLSA collective should be permitted to pursue their claims collectively pursuant to 29 U.S.C. § 216(b).

78.     Pursuant to 29 U.S.C. § 216(b), attached to and filed with the Complaint as Exhibit A, is the Consent to File Suit as Plaintiff executed by Named Plaintiff.

79.     As this case proceeds, it is likely other individuals will file consent forms and join as opt-in plaintiffs.

80.     Named Plaintiff requests that he be permitted to serve as representative of those who consent to participate in this action and that this action be conditionally certified

18

as a collective action pursuant to 29 U.S.C. § 216(b).

## NCWHA CLASS ALLEGATIONS
## PURSUANT TO RULE 23 OF THE FEDERAL RULES OF CIVIL PROCEDURE

81.     Named Plaintiff brings the Second Cause of Action of the instant Complaint as a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of himself and all similarly situated employees to remedy Defendant's violations of the NCWHA, N.C. Gen. Stat. § 95-25.1, *et seq*.

82.     <u>Numerosity</u>: The proposed class is so numerous that joinder of all such persons is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. While the exact number of class members is unknown to Plaintiff at this time, the class comprises more than one hundred individuals upon information and belief.

83.     <u>Common Questions Predominate</u>: There is a well-defined commonality of interest in the questions of law and fact involving and affecting the proposed class, and these common questions of law and fact predominate over any questions affecting members of the proposed class individually, as all putative class members have been harmed by Defendant OPW's failure to lawfully compensate them. The common questions of law and fact include but are not limited to the following:

   a. Whether Defendant OPW failed to compensate putative Class Members at the earned, accrued, and/or promised rate for all hours worked less than forty (40) per week and in excess of forty (40) each week pursuant to § 95-25.6 and consistent with Defendant's employee handbook as required pursuant to

19

§ 95-25.13.

    b. Whether Defendant OPW failed to compensate putative NC Class Members for all of their earned, accrued, and/or promised wages, including but not limited to straight time and overtime on their regular pay date in violation of the NCWHA.

    c. Whether Defendant OPW failed to compensate putative NC Class Members for all of their earned, accrued, and/or promised wages, including but not limited to promised bonuses, holiday, or vacation in violation of the NCWHA.

84. <u>Typicality</u>: The claims of Plaintiff are typical of the claims which could be alleged by any member of the putative class, and the relief sought is typical of the relief which would be sought by each member of the class in separate actions. All putative class members were subject to the same compensation practices of Defendant OPW, as alleged herein, of failing to pay putative class members for all hours worked at the promised hourly rate(s). Defendant OPW's compensation policies and practices affected all putative class members similarly, and Defendant OPW benefited from the same type of unfair and/or unlawful acts as to each putative class member. Plaintiff and members of the proposed class sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

85. <u>Adequacy of Representation</u>: Named Plaintiff is able to fairly and adequately protect the interests of all members of the proposed class, and there are no known conflicts of interest between Named Plaintiff and members of the proposed class. Named Plaintiff

has retained counsel who are experienced and competent in both wage and hour law and complex class action litigation.

86.    Superiority: A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all class members is impracticable. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions engender. Because the losses, injuries, and damages suffered by each of the individual class members may be small for some in the sense pertinent to the class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The cost to the court system and the public for the adjudication of individual litigation and claims would be substantially greater than if the claims are treated as a class action. Prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they are not parties. The issue in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can and is empowered to fashion methods to efficiently manage this action as a class action.

87.    Public Policy Considerations: Defendant OPW violated the NCWHA. Just

21

as current employees are often afraid to assert their rights out of fear of direct or indirect retaliation, former employees may also be fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class action lawsuits provide class members who are not named in the Complaint with a degree of anonymity, which allows for vindication of their rights while eliminating or reducing these risks.

88.     Pursuing this action as a class will provide the most efficient mechanism for adjudicating the claims of Plaintiffs and members of the proposed class.

### COUNT ONE
**Violation of the Fair Labor Standards Act**
**Brought by Plaintiff on Behalf of Himself and All Similarly Situated Employees**

89.     Plaintiffs incorporate by reference all preceding paragraphs as if the same were repeated here verbatim.

90.     At all relevant times, Defendant OPW has been and continues to be an "employer" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of the FLSA, 29 U.S.C. § 203.

91.     At all relevant times, Defendant OPW has employed and continues to employee "employee[s]," including Named Plaintiff, and the members of the prospective FLSA collective who have been and continue to be engaged in interstate "commerce" within the meaning of the FLSA, 29 U.S.C. § 203.

92.     At all relevant times, Defendant OPW has had gross operating revenues in excess of $500,000.

93.     The FLSA, pursuant to §§206 and 207, requires each covered employer,

including Defendant OPW, to compensate all non-exempt employees at a rate of not less than one-and-one-half (1.5) times the regular rate of pay for work performed in excess of forty (40) hours in a single workweek.

94.     At all relevant times, Defendant OPW, pursuant to its policies and practices, willfully failed and refused to pay for all hours worked by Plaintiffs as well as non-discretionary bonuses.

95.     Defendant OPW's failure to pay Plaintiffs for all hours worked at the appropriate overtime rate for hours worked in excess of forty (40) hours per week despite, upon information and belief, knowing its obligations under the law entitles Plaintiffs to liquidated damages in an amount equal to the amount of unpaid wages under 29 U.S.C. § 216(b) and a three (3) year statute of limitations. Defendant OPW cannot show it acted in good faith, and its acts constitute willful violations of the FLSA within the meaning of 29 U.S.C. § 255(a).

96.     As a result of Defendant OPW's unlawful acts, Plaintiffs have been deprived of compensation for all required hours worked and appropriate compensation for all overtime hours worked, entitling them to recovery of actual damages, liquidated damages, and attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

97.     Plaintiffs and putative plaintiffs each worked more than forty (40) hours in one or more workweeks within the applicable statutory period.

**<u>COUNT TWO</u>**
**Violation of the North Carolina Wage and Hour Act**
**N.C. Gen. Stat. § 95-25.6**
**Brought by Plaintiff on Behalf of Himself and All Similarly Situated Employees**

98.     Plaintiffs incorporate by reference all preceding paragraphs as if the same were repeated here verbatim.

99.     The class period for this cause of action is at least two years from the date of the filing of this Complaint. *See* Dkt. 1.

100.    At all relevant times, Defendant OPW has employed and/or continues to employ putative Plaintiffs and Rule 23 class members within the meaning of the NCWHA.

101.    Pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.6, it is unlawful for an employer to "suffer or permit" an employee to work without paying all owed, earned, and promised wages on the employee's regular payday.

102.    Additionally, North Carolina law requires every employer to notify employees of the promised wages and the day of payment as well as making available a written version of the employment practices and policies regarding promised wages. *See* N.C. Gen. Stat. § 95-25.13(1)-(2).

103.    Acceptable measures of providing employees information about promised wages include "an up-to-date employee handbook or other written statement of policies and practices with regard to promised wages" or through "payroll records, including check stubs, for wages promised in the form of hourly pay or salary or other form whose terms are readily identifiable from payroll records," and employers are required to pay such promised wages. Notification of Employment, 13 N.C.A.C. 12.0805 (2022).

104.    Additionally, "[a]n employee's signature on an employer's written notice of the promised wages which bears the date on which the employee was provided with the

notice shall be presumptive evidence of the employer's notification in accordance with G.S. 95-25.13(1)." Notification at Time of Hiring, 13 N.C.A.C. 12.0804 (2022).

105.    Invariably, ***"[o]nce a promise is made by an employer, that employer must pay all promised wages, including wage benefits, accruing to its employees based on any policy, agreement or practice that the employer has established***." *See* North Carolina Department of Labor, *Promised Wages Including Wage Benefits*, https://www.labor.nc.gov/workplace-rights/employee-rights-regarding-time-worked-and-wages-earned/promised-wages-including.

106.    Pursuant to the NCWHA, N.C. Gen. Stat. §§ 95-25.13 and 95-25.6, Defendant OPW was required to pay Plaintiffs and putative class members all wages, when due, for all promised earned and accrued regular, straight, and overtime wages of one and one-half times the promised wage rate, which is a part of all the employees' accrued and earned wages, and which should have been paid when due on the employees' regular payday; this requirement is not covered by the overtime provision under the FLSA. Moreover, the FLSA's Savings Clause pursuant to § 218(a) provides that employers should comply with the more stringent between the FLSA and state wage and hour laws. Because the NCWHA provides more stringent protections than the FLSA, the FLSA does not preempt the NCWHA.

107.    Every employer shall maintain complete and accurate records that document, in relevant part, the hours worked each workweek and all other records required to compute wages. 13 NCAC 12.0801.

108.    Defendant OPW intentionally refused to pay all wages due, including wages

25

for all hours worked, as accurately recorded by Plaintiffs, and as set forth in the preceding paragraphs of this Complaint, to Plaintiffs and putative class members in violation of the NCWHA.

109.   Defendant OPW was aware that Plaintiffs and putative Plaintiffs were not receiving all straight-time wages for all hours worked up to forty (40) and overtime wages for hours worked in excess of forty (40) per week pursuant to the promised straight-time rate and corresponding premium overtime rate.

110.   Defendant OPW employed Named and putative Plaintiffs within the State of North Carolina.

111.   At all relevant times, Defendant OPW, pursuant to its policies and practices, failed and refused to pay Plaintiffs all owed, earned, and promised wages, including for all work-related activities performed from the moment they clock in through the moment they clocked out, including, for example, required pre-shift work performed by Plaintiffs, and at the appropriate promised overtime rate that Plaintiffs are lawfully entitled to for hours worked in excess of forty (40) in a single workweek pursuant to the NCWHA.

112.   Consistent with the above, Defendant's failure to pay Plaintiffs all owed, earned, and promised wages was in violation of N.C. Gen. Stat. § 95-25.6.

113.   As a result of Defendant's unlawful policies and practices, Plaintiffs have been deprived of compensation due and owing.

114.   Defendant's failure to pay Plaintiffs all owed, earned, and promised wages, despite the fact that, upon information and belief, Defendant OPW knew of its obligations under the law, entitles Plaintiffs to liquidated damages in an amount equal to the amount

26

of unpaid wages, under N.C. Gen. Stat. § 95-25.22(a1).

115. Due to Defendant OPW's unlawful acts, Plaintiffs have been deprived of all compensation due under the law, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to N.C. Gen. Stat. §§ 95-25.13, 95-25.6, 95-25.22(a), (a1), and (d).

## PRAYER FOR RELIEF

WHEREFORE, Named Plaintiff, on behalf of himself and all those similarly situated, prays that this Honorable Court:

1. Issue an Order certifying this action as a collective action under the FLSA and designate Named Plaintiff as a representative of all those similarly situated under the FLSA collective action;

2. Issue an Order certifying this lawsuit as a class action under the NCWHA and designate Named Plaintiff as a representative on behalf of all those similarly situated under the NCWHA class;

3. Award Plaintiffs and all those similarly situated actual damages for all unpaid wages found due and liquidated damages equal in amount as provided by the FSLA, 29 U.S.C. § 216(b) and pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.22(a);

4. Award Plaintiffs and all those similarly situated pre- and post-judgment interest at the statutory rate as provided by the FLSA, 29 U.S.C. § 216(b) and pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.22(a);

5. Award Plaintiffs and all those similarly situated their attorneys'' fees, costs, and disbursements as provided by the FLSA, 29 U.S.C. § 216(b), and pursuant to the

27

NCWHA, N.C. Gen. Stat. § 95-25.22(d); and

6.      Grant such further legal and equitable relief as the Court deems necessary

and proper in the public interest.

## <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby

demands a trial by jury on all issues so triable.

Respectfully submitted, April 17, 2025.

*/s/ Gilda Adriana Hernandez*
Gilda A. Hernandez (NCSB No. 36812)
Hannah B. Simmons (NCSB No. 59579)
Matthew S. Marlowe (NCSB No. 60035)
Briahna B. Koegel (NCSB No. 62491)
**THE LAW OFFICES OF GILDA A.**
**HERNANDEZ, PLLC**
1020 Southhill Drive, Ste. 130
Cary, NC 27513
Phone: (919) 741-8693
Fax: (919) 869-1853
ghernandez@gildahernandezlaw.com
hsimmons@gildahernandezlaw.com
mmarlowe@gildahernandezlaw.com
bkoegel@gildahernandezlaw.com

*Attorneys for Plaintiff*

28