**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**CIVIL ACTION NO. 5:25-CV-00203-FL**

| | |
|---|---|
| ANGEL QUEVEDO HERNANDEZ, on behalf of himself and all others similarly situated, | ) ) ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| OPW Fueling Components, LLC, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL ARBITRATION OF PLAINTIFF ANGEL QUEVEDO HERNANDEZ'S CLAIMS OR IN THE ALTERNATIVE TO DISMISS HIS COLLECTIVE AND CLASS ACTION CLAIMS**

Pursuant to Rules 12(b)(1), 12(b)(3) and 12(b)(6) of the Federal Rules of Civil Procedure (FRCP), and the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. ("FAA"), Defendant OPW Fueling Components, LLC ("OPW" or "Defendant"), respectfully submits this Memorandum in Support of its Motion to Compel Arbitration of Plaintiff Angel Quevedo Hernandez's Claims, or in the alternative, to dismiss Plaintiff's class and collective actions.

**Bottom Line Up Front**

Plaintiff Angel Quevedo Hernandez ("Hernandez") executed an Employment Agreement in connection with his employment with OPW that contains a binding arbitration agreement that requires him to individually arbitrate any employment related claims he has against Defendant. *See* **Exhibit A**, Decl. of Linda Townsley, Ex. 2 - Employment Agreement. Notwithstanding the valid and enforceable agreement to arbitrate his claims, Hernandez breached that agreement and filed this lawsuit, alleging causes of action that fall squarely within the scope of his agreement. Hernandez cannot evade his arbitration obligation. The Court should compel Hernandez to

arbitrate his claims and stay his claims in this lawsuit pending arbitration pursuant to his agreement with OPW and under the FAA.

Hernandez previously claimed he never signed the Employment Agreement.[1] *See Canales v. OPW Fueling Components, LLC*, Civ. Act. No. 5:22-CV-459-BO-RJ, E.D.N.C, ECF No. 165. Significantly here, "a signatory's inability to remember signing an [arbitration] agreement…is insufficient to create a genuine dispute as to the authenticity of the signature." *Gordon v. TBC Retail Grp., Inc.,* No. 2:14-cv-03365-DCN, 2016 WL 4247738, at *4 (D.S.C. Aug. 11, 2016). Hernandez cannot create a genuine dispute as to the authenticity of his signature nor can he provide a genuine dispute as to the existence of a valid agreement to arbitrate.

Further, Mr. Hernandez's class and collective actions should be dismissed for a failure to state a claim upon which relief can be granted, because Mr. Hernandez is collaterally estopped from pursuing the action as a class and collective action. This Court has already entered an order denying class certification in a nearly identical case. *See Canales v. OPW Fueling Components, LLC*, ECF No. 208. Mr. Hernandez was an opt-in plaintiff in the *Canales* case, in which the plaintiff sought certification of classes, which entirely overlap with the classes he now seeks to certify in this action. The Court should reject Mr. Hernandez's attempt to revisit this Court's decision in the *Canales* matter, and the class and collective claims should be dismissed.

**<u>Factual Background</u>**

**A. Hernandez Signed an Arbitration Agreement While Employed with OPW**

In early 2023, OPW underwent a corporate restructuring, transitioning to becoming part of the Dover Fueling Solutions group of companies. Related to this restructuring, OPW held meetings

---

[1] Plaintiff Hernandez previously opted-in to a nearly identical class and collective action filed in this same court.

2

with employees in December 2022 to explain the migration from OPW to Dover Fueling Solutions. (Townsley Decl. ¶4.) These meetings included a presentation that presented employees with information regarding the new vacation policy, the additional paid holidays, and paid time off for volunteer work. (*Id*.)

In January 2023, the new employment agreement and offer letter were presented to employees during a town hall meeting. (*See id*. ¶5.) During the town hall meeting, human resources reviewed the employment agreement and offer letter with employees, allowed employees to ask questions, and discussed the transition to Dover Fueling Solutions. (*See id*.) Employees were also informed that if they had questions regarding the employment agreement or offer letter that they could come to human resources. (*See id*.) These town hall meetings were mandatory, and meetings were held throughout the day to ensure that employees from each shift could attend the meetings. (*See id*.)

When Hernandez, who was at the time an OPW employee, was presented with the Employment Agreement, he also received a new offer letter, dated January 3, 2024, that provided important information related to OPW Fueling Components becoming part of the Dover Fueling Solutions group of companies, including information related to the updated terms and conditions of his employment. (*See* Townsley Decl., Ex. 1, Offer Letter.) The offer letter specifically informed Hernandez that "[a]attached to this letter, you'll find an Employment Agreement that includes some rules you will be expected to follow, including keeping company information confidential and returning any company property you have upon employment separation. **It also includes a mutual agreement between the Company and you to arbitrate any disputes that might arise related to your employment. Please read this agreement carefully**." (*See id*. Ex. 1, at 2 (emphasis added).) The offer letter also informed Hernandez of additional benefits that he would

be eligible for, including paid sick time, two additional paid holidays each year, additional break time, paid time to volunteer, and a new vacation policy. (*See id*.) The offer letter informed Hernandez that "[i]f the terms discussed in this letter are acceptable to you, please sign the Acceptance of Offer Letter on the following page and the Employment Agreement that is attached and return them both to me by January 23, 2023, retaining a copy of your records." (*See id*. at 3.) Hernandez executed the offer letter on January 10, 2023, with his wet signature, printed his full name, and dated it. (*See id*. at 4.)

The Employment Agreement states, in part, "I further agree and acknowledge that the Company and I will utilize binding arbitration as the sole and exclusive means to resolve all disputes that may arise out of or be related in any way to my employment, including but not limited to the termination of my employment and my compensation." (*Id.*, Ex. 2, Agreement.) The Agreement further states:

> The Company and I each specifically waive and relinquish our right to bring a claim against the other in a court of law, and this waiver shall be equally binding on any person who represents or seeks to represent me or the Company in a lawsuit against the other in a court of law. Both I and the Company agree that any claim, dispute, and/or controversy that I may have against the Company (or its owners, directors, officers, managers, employees, or agents), or the Company may have against me, shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act ("FAA").

*Id.* The Agreement specifically states that it applies to "all disputes, whether based on tort, negligence, contract statute (including, but not limited to . . . the Fair Labor Standards Act, the North Carolina Wage and Hour Act…)." (*Id.*) Further, the Agreement includes a collective and class action waiver: "Unless I have exercised my right to opt out of the terms of this Paragraph as provided for herein, I agree that any claims brought under this binding Agreement shall be brought in the individual capacity of myself or the Company. . . . By signing this Agreement, I am agreeing to waive any substantive or procedural rights that I may have to bring or participate in an action

brought on a class or collective basis." (*Id.*) Even though he was provided with an opportunity to do so, Hernandez did not opt out of the arbitration or collective/action waiver provisions in the Agreement. (*See* Townsley Decl. ¶6.) Rather, like his acceptance of the offer letter, Hernandez executed the Agreement on January 10, 2023, with his wet signature, printed his full name, and dated it. (*See id.*, Ex. 2 at 5.) It is the same signature and handwriting as the on the Acceptance of Offer Letter and matches Hernandez's signature on other documents within Hernandez's personal file with OPW. (Townsley Decl. ¶7.)

Despite, and in breach of, the Agreement, Hernandez filed this lawsuit on April 17, 2025, alleging claims under the Fair Labor Standards Act and the North Carolina Wage and Hour Act.

Hernandez's claims fall squarely within the scope of the binding Agreement, and he should be compelled to arbitrate his claims.

### B. The *Canales* Case

On November 16, 2022, Ovis Matamoros Canales filed a putative collection and class action lawsuit against OPW Fueling Components, LLC, represented by the same counsel as Mr. Hernandez, for alleged violations of the Fair Labor Standards Act and the North Carolina Wage and Hour Act. *See Canales*, ECF No. 1. On April 4, 2024, Canales' Second Amended Collective/Class Action Complaint was docketed, wherein Canales sought to certify a collective action under the FLSA and a class action under the NCWHA. *See id.* ECF No. 97. Specifically, Canales sought to certify a collective action on behalf of the following class:

> All individuals who were, are, or will be employed at Defendant OPW's North Carolina facility on the manufacturing floor in non-managerial positions who were not compensated for all of their hours worked, including, but not limited to, above forty (40) per week any time within three years prior to the commencement of this action, through the present.

*Canales*, ECF No. 97 ¶ 7. Canales also sought to certify a class under Rule 23 of the Federal Rules of Civil Procedure on behalf of the following class:

> Individuals who were, are, or will be employed at Defendant OPW's North Carolina facilities on the manufacturing and operations floor in non-managerial positions, were not compensated all promised, earned, and accrued wages due to Defendant OPW's policies, including, but not limited to, compensation for all hours worked up to forty (40) in a week and for hours worked above forty (40) in a week within two years prior to the commencement of this action, through the present.

*Id*. at ¶ 12.

On October 11, 2024, Hernandez filed a Consent to Joint Suit as Party Plaintiff in the *Canales* action under the Fair labor Standards Act. *See Canales*, ECF No. 149-1.

On December 9, 2024, after the parties had conducted discovery, Canales filed a Motion for Conditional Certification Pursuant to the Fair Labor Standards Act, for Court-Authorized Notice to be Issued Under 29 U.S.C. § 216(B), for Class Certification under Fed. R. Civ. P. 23, and for Appointment of Class Counsel under Fed. R. Civ. P. 23(G) ("Canales Motion for Conditional Certification"). *See Canales*, ECF No. 167. In Canales' Motion for Conditional Certification, Canales sought to conditionally certify a collective action under the FLSA and a Rule 23 class as defined in his Second Amended Complaint. *See id*.

On March 25, 2025, this Court entered an Order denying Canales' Motion for Conditional Certification. *See Canales*, ECF No. 208. The Court concluded that Canales' "factual basis [was] inadequate to show that the purported plaintiffs were the victims of a common unlawful plan or policy," and held "that the named plaintiff Canales and the putative plaintiffs are not similarly situated for purposes of the FLSA." *See id*. at 5. Specifically, the Court concluded that, regarding donning and doffing PPE, "[t]here was no formal policy in OPW's safety or PPE guidelines, rendering the donning and doffing of PPE largely a matter of personal preference," which was confirmed by the fact that Canales presented declarations from Canales and another opt-in plaintiff

indicating they would don their PPE after clocking in. *Id*. The Court also recognized that Canales, and each of the opt-in Plaintiffs, including Hernandez, provided differing factual circumstances related to alleged bonuses. *See id*. Most importantly, the Court recognized that "Hernandez states that he was able to resolve the issue [with his bonuses] after talking to his superiors...." *Id*.

The Court also denied Canales' request to certify a Rule 23 class for alleged violations of the NCWHA. The Court concluded that Canales' "proposed common questions about the failure to pay employees in accordance with the NCWHA are good for only one employee at a time," recognizing that "[t]he problem becomes amplified when a complaint advances myriad theories of liabilities," which in *Canales* included "time-shaving, failure to compensate workers for time spent donning and doffing PPE, failure to pay promised bonuses, and an unspoken policy requiring employees to service their own equipment in the absence of technicians." *Id*. at 8. The Court held Canales failed to demonstrate commonality sufficient to satisfy the standard of Rule 23(a), and "any common questions that may exist within the proposed class do not predominate over questions affecting individual members." *Id*. at 9. Finally, the Court concluded that "absent more connective tissue tying the purported class together, a class action is not superior to other methods for bringing this litigation to a fair and lawful end." *Id*.

On April 17, 2025, Canales filed a Motion for Reconsideration seeking reconsideration of the Court's Order denying Plaintiff's Motion for Conditional Certification. *See Canales*, ECF No. 220. On May 8, 2025, OPW filed its Response in Opposition to Canales' Motion for Reconsideration of the Court's Order denying Plaintiff's Motion for Conditional Certification.

## C. Hernandez's Class Allegations

Hernandez's Complaint largely tracks the Second Amended Complaint in the *Canales* matter. Hernandez seeks to certify a collective action pursuant to the FLSA on behalf of the following class:

> All individuals who were, are, or will be employed at Defendant OPW's North Carolina facility on the manufacturing floor in non-managerial positions who were not compensated for all of their hours worked, including, but not limited to, above forty (40) hours per week any time within three years prior to the commencement of this action through present.

ECF No. 1 ¶ 7. This class definition is identical to the proposed class in *Canales*. *See Canales*, ECF No. 97 ¶ 7. Hernandez also seeks to certify a Rule 23 class for alleged violations of the NCWHA for the following class:

> Proposed 30 Minute Auto Deduction Class: All individuals who were, are, or will be employed at Defendant OPW's North Carolina facilities on the manufacturing and operations floor in nonmanagerial hourly positions who were subject to interrupted lunch breaks during supposed thirty-minute (30) meal breaks, without a corresponding time entry showing that an unpaid meal was recorded and/or paid as hours worked. (the "Meal Break Deduction Class").

> Proposed Time-Shaving Class 2: All individuals who were, are, or will be employed at Defendant OPW's North Carolina facilities on the manufacturing and operations floor in nonmanagerial hourly positions whose time was recorded and experienced time shaving from their actual recorded hours worked. (the "Time-Shaving Class").

> Proposed Off the Clock ("OTC") Work Class. All individuals who were, are, or will be employed at Defendant OPW's North Carolina facilities on the manufacturing and operations floor in nonmanagerial hourly positions who may have been subjected to Off-the-Clock work at least once prior to the start of their shift, during lunch breaks, or following the end of their shift. (the "Off-The-Clock Class").

> Proposed Holiday and/or PTO Class: All individuals who were, are, or will be employed at Defendant OPW North Carolina facilities on the manufacturing and operations floor in nonmanagerial hourly positions, subject to non-payment of wages at least once for promised unpaid holidays and/or Paid Time Off ("PTO"). (the "Holiday/PTO Class").

8

Proposed Bonuses Class: All individuals who were, are, or will be employed at Defendant OPW's North Carolina facilities on the manufacturing and operations floor in nonmanagerial hourly positions, subject to non-payment of promised bonuses at least once. (the "Bonuses Class").

ECF No. 1 ¶ 12. These are the same proposed class definitions put forth by Hernandez's counsel in Canales's Reply brief in support of his Motion for Conditional Certification, *Canales* ECF No. 184 at 12-13, which the Court rejected in its Order denying the motion. *Canales* ECF No. 208.

**Argument**

### I. Hernandez's Claims Should be Compelled to Arbitration

#### A. Standard of Review

Because Hernandez has previously asserted that he does not remember or did not sign the arbitration agreement, OPW will address the summary judgment standard. *See Rowland v. Sandy Morris Fin. & Est. Plan. Servs., LLC*, 993 F.3d 253, 258 (4th Cir. 2021). Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

#### B. Argument

#### 1. Hernandez Fails to Create a Dispute of Fact

Hernandez's previous claim that he never signed the Agreement is not enough to overcome the evidence of a signed Agreement. "[T]he FAA provides that '[a] written provision in . . . a

9

contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Capps v. Harris*, Nos. 5:18-cv-133 and 7:18-cv-47, 2019 WL 2404547, *4 (E.D.N.C. June 6, 2019) (quoting 9 U.S.C. § 2). "'[U]pon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement. . . .'" *Id.* (quoting 9 U.S.C. § 3). "[A] 'party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction . . ., for an order [compelling arbitration as provided for in the agreement].'" *Id.* (quoting 9 U.S.C. § 4). "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Id.* (citing *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25, 103 S. Ct. 927, 941, 74 L.Ed.2d 765 (1983)).

Courts "must compel arbitration if: '(i) the parties have entered into a valid agreement to arbitrate, and (ii) the dispute in question falls within the scope of the arbitration agreement.'" *Keena v. Groupon, Inc.*, 192 F. Supp. 3d 630, 634 (W.D.N.C. 2016) (quoting *Chorley Enter., Inc. v. Dickey's Barbecue Rest., Inc.,* 807 F.3d 553, 563 (4th Cir.2015)).

In this case, OPW establishes both requisite elements: a valid, enforceable agreement to arbitrate Hernandez's wage claims exists, and all of Hernandez's claims are within the scope of the Agreement.

### a. The Parties Have Entered Into A Valid And Enforceable Agreement

Hernandez executed a binding agreement to arbitrate the claims he alleges arose out of his former employment with OPW. "When deciding whether the parties agreed to arbitrate a certain matter, courts generally should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Under North Carolina law, "'a valid contract requires (1) assent; (2) mutuality of obligation; and (3) definite terms." *Charlotte Motor Speedway, LLC v. Cty. of Cabarrus,* 748 S.E.2d 171, 176 (N.C. Ct. App. 2013)). Like the federal courts, North Carolina courts have also recognized a strong public policy favoring arbitration and have held that, where there is any doubt concerning the existence of an arbitration agreement, it should be resolved in favor of arbitration. *Martin v. Vance*, 133 N.C. App. 116, 120, 514 S.E.2d 306, 309 (1999).

Here, Hernandez executed a valid, enforceable arbitration agreement. *See* Ex. A, Townsley Decl., Ex. 2. Hernandez signed the Agreement on January 10, 2023, demonstrating his assent to the Agreement. *Id.* Additionally, the Agreement provides mutuality of obligations, wherein both OPW and Hernandez agreed to arbitrate any employment disputes. *See O'Neil v. Hilton Head Hosp*., 115 F.3d 272, 275 (4th Cir. 1997) ("A mutual promise to arbitrate constitutes sufficient consideration for [an] arbitration agreement."); *Starnes v. Conduent Inc*., No. 1:17CV495, 2018 WL 3466951, at *7 (M.D.N.C. July 18, 2018) ("This mutual agreement to be bound is sufficient consideration."). Further, the Agreement contains definite terms, including that both Hernandez and OPW "will utilize binding arbitration as the sole and exclusive means to resolve all disputes that may arise out of or be related in any way to [Hernandez's] employment, including but not limited to the termination of [Hernandez's] employment and [his] compensation." *See* Ex. A, Townsley Decl., Ex. 1. Accordingly, Hernandez entered into a valid agreement to arbitrate.

### i. Hernandez's assertion that he did not sign the Agreement is insufficient to defeat a motion to compel arbitration.

Courts have found that that a plaintiff's assertion he or she did not sign the agreement is insufficient to defeat a motion to compel arbitration. *Snow v. Genesis Eldercare Rehab. Servs., LLC*, No. CV 3:22-1794-SAL-PJG, 2022 WL 17668157, at *1 (D.S.C. Sept. 6, 2022), *report and recommendation adopted*, No. CV 3:22-1794-SAL, 2023 WL 371085 (D.S.C. Jan. 24, 2023) (granting motion to compel arbitration where plaintiff claimed she did not sign the arbitration agreement but offered nothing more than her own declaration to support her assertion). A lack of recollection alone is insufficient to reasonably call into question the validity of the document. *See Gordon v. TBC Retail Grp., Inc.,* C/A No. 2:14-cv-03365-DCN, 2016 WL 4247738, at *7 (D.S.C. Aug. 11, 2016) ("[A] signatory's inability to remember signing an agreement, or other surrounding facts, is insufficient to create a genuine dispute of fact as to the authenticity of the signature."); *Gadberry v. Rental Serv. Corp.,* C/A No. 0:09-3327-CMC-PJG, 2011 WL 767034 (D.S.C. Feb. 24, 2011) (finding plaintiff's argument that an agreement did not exist because he did not recall signing the contract was not supported by affirmative evidence).

A party challenging a motion to compel arbitration must offer evidence, beyond the party's own affidavit, testimony, or assertions, establishing that "their signature was forged, the terms of the contract were misrepresented, or some other reason evincing lack of true agreement." *Gordon*, 2016 WL 4247738, at *5 (citations omitted); *see Gadberry*, 2011 WL 766991, at *2.

Hernandez offers no evidence to support his unsubstantiated assertion that he did not sign the agreement. *See Morton v. Darden Restaurants, Inc.*, 2018 WL 1531634, at *4 (D.S.C. Mar. 2, 2018) ("[w]hile the plaintiff states in her affidavit that she 'do[es] not recall ever seeing" the May 2013 DRP update, this is insufficient to create an issue of fact as to the validity of the arbitration agreement") *report and recommendation adopted*, No. CV 8:17-1865-HMH-KFM, 2018 WL

1524093) (D.S.C. Mar. 27, 2018). In fact, Hernandez signed an offer letter, which further corroborates that he did receive an arbitration agreement and that he understood his employment was subject to an arbitration agreement. *See* **Ex. A**, Townsley Decl., Ex. 1.

The Agreement, signed with his employee number, is kept in OPW's ordinary course of business and is located in Hernandez's official OPW personnel file. *Id.* ¶ 7. Hernandez's file also contains a signed Acceptance of Offer Letter, which contains his wet signature and was signed on the same date he signed the Agreement. *Id.* There is no evidence these documents can be altered in any way or that someone else signed the documents on Hernandez's behalf.

Hernandez's claims that he never signed the Agreement or that he does not remember signing it are unavailing. *See Snow,* 2022 WL 17668157 at *5; *Morton,* 2018 WL 1531634, at *4; *Gadberry*, 2011 WL 766991, at *2; *Gordon*, 2016 WL 4247738, at *5. The presence of Hernandez's signature on the document along with the employee ID number confirm Hernandez signed the Agreement. *Snow,* 2022 WL 17668157, at *3.

### b. Hernandez's Allegations Fall Within the Scope of the Arbitration Agreement

The Agreement states, in part, "I further agree and acknowledge that the Company and I will utilize binding arbitration as the sole and exclusive means to resolve **all disputes** that may arise out of or be related in any way to my employment, including but not limited to the termination of my employment and **my compensation**." *Id.* (emphasis added). The Agreement specifically states that it applies to "all disputes, whether based on tort, negligence, contract statute (including, but not limited to…**the Fair Labor Standards Act, the North Carolina Wage and Hour Act**…)." *Id.* (emphasis added). The Second Amended Collective/Class Action Complaint alleges causes of action for alleged violations of the Fair Labor Standards Act and the North Carolina

Wage and Hour Act - each of which fall squarely within the scope of the Agreement. (*See* ECF No. 97, Exhibit A).

Because Hernandez and OPW have a valid, binding agreement to arbitrate Plaintiff's employment related claims, and, in light of the strong policy in favor of arbitration, the Court should compel Hernandez to arbitrate his claims.

## 2. The Arbitration Provision is Not Unconscionable

In a declaration submitted by Hernandez in the *Canales* matter, he claimed that he has "no recollection of attending a 'town-hall' where a document with legal consequences was discussed…" and his "manager never advised [him] about this pending lawsuit, and that it was about recovering unpaid wages for hours worked, and that [he] had a right to participate if [he] wanted to or bring any claim or complaint for unpaid wages through another process called 'arbitration.'" *See Canales,* ECF No. 165. To the extent Hernandez argues the arbitration provision in the Agreement is unconscionable, Hernandez cannot meet his burden of establishing both procedural and substantive unreasonableness or unfairness. *See Raper v. Oliver House, LLC*, 180 N.C.App. 414, 419, 637 S.E.2d 551, 554 (2006) ("Unconscionability is an affirmative defense and the party asserting the defense bears the burden of proof").

"A contract is deemed unconscionable if the 'inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on the one hand, and no honest and fair person would accept them on the other.'" *Wilkerson ex rel. Estate of Wilkerson v. Nelson*, 395 F.Supp.2d 281, 289 (M.D.N.C. 2005) (quoting *Brenner v. Little Red School House, Ltd.*, 302 N.C. 207, 213, 274 S.E.2d 206, 210 (1981)). "Unconscionability requires both procedural and substantive unreasonableness

or unfairness." *Id.* (citing *Rite Color Chem. Co. v. Velvet Textile Co.*, 105 N.C.App. 14, 19-20, 411 S.E.2d 645, 648-49 (1992)).

The North Carolina Court of Appeals has described procedural and substantive unconscionability as:

> Procedural unconscionability involves "bargaining naughtiness" in the formation of the contract, i.e., fraud, coercion, undue influence, misrepresentation, inadequate disclosure. Substantive unconscionability…involves the harsh, oppressive, and one-sided terms of a contract, i.e., inequality of the bargain. The inequality of the bargain, however, must be so manifest as to shock the judgment of a person of common sense, and…the terms…so oppressive that no reasonable person would make them on the one hand, and no honest and fair person would accept them on the other.

*Raper v. Oliver House, LLC*, 180 N.C.App. 414, 420, 637 S.E.2d 551, 555 (2006) (quoting *Martin v. Sheffer*, 102 N.C.App. 802, 805, 403 S.E.2d 555, 557 (1991)). "In the absence of any evidence of bad faith, inequality, or lack of mutuality described above, the inclusion of an agreement to arbitrate is neither procedurally or substantively unconscionable." *Id.*

Here, there is no evidence of bad faith, inequality, or lack of mutuality. Rather, in Hernandez's Declaration, he appears to argue the Agreement is unconscionable because he does not remember signing it and does not remember a town hall discussing the arbitration provision. However, "[p]ersons entering contracts…have a duty to read them and ordinarily are charged with knowledge of their contents." *Id.* 180 N.C.App. at 421 (quoting "*Nationwide Mut. Insur. Co. v. Edwards*, 67 N.C.App. 1, 8, 312 S.E.2d 656, 661 (1984)). Accordingly, there is no evidence to support a finding of procedural unconscionability.

Regarding substantive unconscionability, "[t]here is nothing, however, substantively unfair about binding arbitration. If there were, there would not be the strong policy favoring it." *Wilkerson*, 395 F.Supp.2d at 289-90. In *Raper*, the North Carolina Court of Appeals overturned

15

the trial court's determination that an arbitration clause was unconscionable, because "[t]he agreement to arbitrate is prominently located on the last page of the contract in bold fact type, directly above plaintiff's signature. The provisions of the agreement to arbitrate are mutual and apply equally to all parties." *Raper*, 180 N.C.App. at 422. Similarly, here, the Agreement contains a mutual agreement to arbitrate, the arbitration provision contains a bold, all capital letters, statement that the Agreement is subject to the Federal Arbitration Act, a bold, all capital letters, provision addressing the jury trial waiver, and a bold, all capital letters, statement directly above Hernandez's signature reiterating that the Agreement requires him to arbitrate any and all disputes arising out of his employment. *See* **Ex. A**, Townsley Decl, Ex. 2. Further, the Agreement allowed Hernandez to opt out of the arbitration provision. *See id*. Accordingly, there is no evidence to support a finding of substantive unconscionability.

As there is no evidence to support a finding of procedural or substantive unconscionability, if Hernandez argues the Agreement is unconscionable, the Court should reject such an argument.

## II. <u>Hernandez's Class and Collective Claims Should be Dismissed.</u>

In the alternative to compelling arbitration of Hernandez's claims and staying the case pending arbitration, the Court should dismiss Hernandez's collective and class action claims, as they are the same claims previously rejected by the Court in *Canales*.

### A. <u>Standard of Review</u>

"A complaint [] can be dismissed on a Rule 12(b)(6) motion 'when its allegations indicate the existence of an affirmative defense that will bar the award of any remedy.'" *Corrigan v. U.S.*, 82 Fed.Cl. 301, 304 (Fed. Claims 2008) (quoting 5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 at 708 (3d ed. 2008)). "Affirmative defenses that have been considered under a Rule 12(b)(6) motion to dismiss, include, among others, 'various types of

16

estoppel' and 'the barring effect of res judicata and related preclusion principles.'" *Id.* (quoting 5B Charles A. Wright & Arthur R. Miller). "Affirmative defenses, like collateral estoppel, may properly be raised through a motion to dismiss under Rule 12(b)(6) if the affirmative defense appears on the face of the complaint, or in documents properly attached to the complaint of which the court may take judicial notice." *Whitt v. Wells Fargo Financial, Inc.*, 664 F.Supp.2d 537, 541 (D.S.C. 2009) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 127 S.Ct. 2499, 2509, 168 L.Ed.2d 179 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."); *Andrews v. Daw,* 201 F.3d 521, 524 n. 1 (4th Cir.2000) ("Although an affirmative defense such as res judicata may be raised under Rule 12(b)(6) only if it clearly appears on the face of the complaint, when entertaining a motion to dismiss on the ground of res judicata, a court may take judicial notice of facts from a prior judicial proceeding when the res judicata defense raises no disputed issue of fact.")). Here, the Court may take judicial notice of the Second Amended Complaint, Canales' Motion for Condition Certification, and the Court's Order Denying Canales' Motion for Conditional Certification. *See Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989).

**B.** **Argument**

"Collateral estoppel, or issue preclusion, provides that once a court of competent jurisdiction actually and necessarily determines an issue, that determination remains conclusive in subsequent suits, based on a different cause of action but involving the same parties, or privies, to the previous litigation." *Weinberger v. Tucker*, 510 F.3d 486, 491 (4th Cir. 2007). "Thus, '[t]he doctrine of collateral estoppel precludes relitigation of issues of fact or law that are identical to

issues which have been actually determined and necessarily decided in prior litigation in which the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate.'" *Id.* (quoting *Virginia Hosp. Ass'n. v. Baliles*, 830 F.2d 1308, 1311 (4th Cir. 1987)). "Under North Carolina law, issue preclusion[2] bars claims where (1) the issues are the same as those involved in the prior action, (2) the issues were raised and actually litigated in the prior action, (3) the issues were material and relevant to the disposition of the prior action, and (4) the determination of those issues were necessary and essential to the judgment in the prior action." *Saimplice v. Ocwen Loan Servicing Inc.*, 368 F.Supp.3d 858, 865 (E.D.N.C. 2019). "Collateral estoppel serves the dual purpose of 'protect[ing] litigants from the burden of relitigating an identical issue and promot[ing] judicial economy by preventing needless litigation.'" *Corrigan*, 82 Fed.Cl. at 307 (quoting *Morgan v. Dep't of Energy*, 424 F.3d 1271, 1274 (Fed.Cir. 2005)). "Collateral estoppel analysis has been applied to the issue of whether a class action can be maintained." *In re Dalkon Shield Punitive Damages Litigation*, 613 F.Supp. 1112, 1115 (E.D.Va. 1985).

In a similar case, in *Frosini v. Bridgestone Firestone North America Tire, LLC*, No. CV 05-0578-CAS, 2007 WL 2781656, at *4 (C.D.Ca. Aug. 24, 2007), the defendant argued that the plaintiffs were collaterally estopped from pursing the action as a class action because a California state court had entered a final order denying class certification in a nearly identical case. Bridgestone argued that the plaintiffs had "asserted 'replica claims,' which are substantially identical to those alleged in" the state court matter. *Id*. The Court in Bridgestone recognized that "[t]he California Court of Appeals has held that collateral estoppel may operate to preclude a successive motion for class certification brought by a putative absent class member in a prior case, provided that 'the party in the earlier case ha[s] interests sufficiently similar to the party in the later

---

[2] "Issue preclusion is the modern term for both direct and collateral estoppel." *Corrigan*, 82 Fed.Cl. at 306.

case, so that the first party may be deemed the Virtual representative' of the second party.'" *Id.* (quoting *Alvarez v. May Dept. Stores Co.*, 143 Cal.App.4th 1223, 1234-36, 49 Cal.Rptr.3d 892 (2006)). In *Alvarez*, the court held that:

> collateral estoppel barred plaintiffs' relitigation of the class certification issue because the plaintiffs in *Duran* and *Alvarez* both alleged that Defendant had engaged 'in the same general misconduct concerning the same policies and procedures. Both complaints allege the misconduct took place during approximately the same time period. The parties sought certification of the same class of employees. In fact, in the trial court, appellants conceded that the class in the *Duran* action included, by definition, appellants.'

*Frosini*, at *5-6 (quoting *Alvarez*, 143 Cal.App.4th 1236-37). In concluding the plaintiffs in *Frosini* were collaterally estopped by the state court order denying class certification from relitigating the issue, the court found that state court order was a final order on the merits of the issue of class certification, and that there was sufficient privity between the parties of the two actions. *Frosini*, 2007 WL 2781656 at *10-11; *see also Breakstone v. Caterpillar, Inc.*, 2010 WL 2164440 (E.D.Va. May 26, 2020) (holding a boat owner was collaterally estopped from filing a class action claim for damages because a prior case had determined that individual issues predominated over common issues); *In re Dalkon Shield Punitive Damages Litigation*, 613 F.Supp. 1112 (E.D.Va. 1985) (holding collateral estoppel precluded certifying a nationwide class action for punitive damages because a prior case denied class certification of a class virtually identical to the class the plaintiff sought to certify); *Corrigan v. U.S.*, 82 Fed.Cl. 301 (2008) (dismissing plaintiff's complaint under collateral estoppel as relitigation of overtime issues would serve no purpose when the only difference was the period of time in which the plaintiff claimed overtime); *In re Bridgestone/Firestone, Inc. Tires Prod. Liab. Litig.*, 333 F.3d 763 (7th Cir. 2003) (holding the Court of Appeals' decision that a nationwide class was not appropriate collaterally estopped other class actions in state courts).

19

Here, Hernandez seeks to relitigate the issue of class certification already decided by this Court. Hernandez cannot argue that any of the four elements of collateral estoppel or issue preclusion set out in *Saimplice* are not met. Regarding the first two elements, Hernandez had an opportunity to, and did, litigate these issues in the *Canales* matter. Further, as discussed above, Hernandez seeks to certify a class in an FLSA collective action that is identical to the class Canales sought to certify, and which this Court rejected. Similarly, Hernandez's proposed Rule 23 classes are identical to the classes he proposed his Reply in support of the Motion for Conditional Certification in the *Canales* case, and which were rejected by the Court at that time. In short, these issues were raised in the *Canales* matter and litigated, and the Court denied Canales' Motion for Conditional Certification as to the collective action under the FLSA and the Rule 23 class under the NCWHA. Regarding the third and fourth elements, it is unquestionable that these issues were material and relevant to this Court's Order denying Canales' Motion for Conditional Certification, and that the determination of these issues were necessary and essential to the Court's Order. Specifically, the issue of whether the proposed class members are similarly situated has been conclusively determined by this Court, as well as the issue of commonality among the proposed class.

Further, Hernandez recognizes that the issues in this matter completely overlap with those in *Canales*. On April 22, 2025, Hernandez filed his Memorandum in Support of Plaintiff's Motion for Equitable Tolling. ECF No. 9. In footnote 2, Hernandez states "[b]ecause the *Canales* Plaintiff has pursued a motion for reconsider in connection with the Court's denial of the *Canales* Plaintiff's motion for conditional/class certification, *see Canales*, ECF No. 208, to the extent the Court grants the *Canales* Plaintiff's motion, Plaintiff Quevedo still represents an opt-in plaintiff/putative Rule 23 class member, and both Plaintiff Quevedo and the *Canales* Plaintiff preserve their right to move

for consolidation of both cases." ECF No. 9, fn. 2. Accordingly, it is clear that Hernandez's class and collective claims in this case directly overlap with those already decided in the *Canales* matter.

While Canales has filed a motion for reconsideration of the Court's Order denying his Motion for Conditional Certification, the Court's Order is sufficient for purposes of issue preclusion. "[F]or purposes of issue preclusion . . . 'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." *Breakstone v. Caterpillar, Inc.*, No. 09-23324-CIV, 2010 WL 2164440, at *4 (E.D.Va. Aug. 28, 2014) (quoting *In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*, 333 F.3d 763, 767 (7th Cir. 2003) ("Although claim preclusion (res judicata) depends on a final judgment, issue preclusion (collateral estoppel) does not. 'The rules of res judicata are applicable only when a final judgment is rendered. However, for purposes of issue preclusion (as distinguished from merger and bar), 'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect.'" (quoting *Restatement (Second) of Judgments* § 13 (1980))).

As the class and collective issues are identical to those raised in the *Canales* matter, the issues were actually litigated in the *Canales* matter, as evidenced by the Court's Order on Canales' Motion for Conditional Certification, and the issues were material and necessary in the Court's decision to deny certification in *Canales*, Hernandez is precluded from seeking to relitigate the class and collective action issues in this case.

## Conclusion

Hernandez executed a valid agreement to individually arbitrate all claims he may have against OPW relating to his prior employment. Hernandez provided no evidence that he did not sign the Agreement other than his own denial. Despite the clear, definite terms of the Agreement,

Hernandez breached the Agreement and filed this lawsuit. OPW respectfully requests that the Court compel Hernandez to arbitrate his claims against it and stay his claims in this lawsuit pending arbitration.

If the Court were to deny OPW's request to compel Hernandez to arbitrate his claims, OPW requests that the Court dismiss Hernandez's class and collective claims, as this Court's decision in the *Canales* matter precludes Hernandez from relitigating the same issues previously decided by this Court.

Dated this 22nd day of May, 2025.    Respectfully submitted,

By:    */s/ David I. Klass*
David I. Klass (NC Bar No. 53342)
Nicholas Hulse (NC Bar No. 54603)
Sharon Suh (NC Bar No. 51683)
**FISHER & PHILLIPS LLP**
227 West Trade Street, Suite 2020
Charlotte, NC 28202
Telephone: 704.334.4565
Facsimile: 704.334.9774
E-mail: dklass@fisherphillips.com
nhulse@fisherphillips.com
ssuh@fisherphillips.com
*Counsel for Defendant OPW Fueling Components LLC*

22

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**CIVIL ACTION NO. 5:25-CV-00203-FL**

| | |
|---|---|
| ANGEL QUEVEDO HERNANDEZ, on behalf of himself and all others similarly situated, | ) ) ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| OPW Fueling Components LLC, | ) |
| | ) |
| Defendant. | ) |

I hereby certify that on May 22, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send electronic notice to Plaintiff's counsel, Gilda A. Hernandez via email to ghernandez@gildahernandezlaw.com as well as to any other counsel of record in this case.

I hereby certify, pursuant to LR 7.2, that the foregoing Memorandum complies with the applicable page limit (30 pages) set forth in LR 7.2(f)(2)(A).

Respectfully submitted,

By:     */s/ David I. Klass*
        David I. Klass (NC Bar No. 53342)
        **FISHER & PHILLIPS LLP**
        *ATTORNEY FOR DEFENDANT*

23