IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
CA No.: 5:25-cv-00203-FL

ANGEL QUEVEDO HERNANDEZ, on behalf )
of himself and all others similarly situated, )
                                 )
              *Plaintiff*, )
                                 )
                   v. )
                                 )
OPW FUELING COMPONENTS LLC, )
                                 )
              *Defendant*. )
                                 )

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION OF PLAINTIFF ANGEL QUEVEDO HERNADEZ'S CLAIMS OR IN THE ALTERNATIVE TO DISMISS HIS COLLECTIVE AND CLASS ACTION CLAIMS**

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................................. 1

II.   RELEVANT FACTS & PROCEDURAL HISTORY ...................................................... 2

    A.    The *Canales* Lawsuit and the Alleged Arbitration Agreements ......................... 2

    B.    Plaintiff's Class Allegations ................................................................................. 5

III.  ARGUMENT ................................................................................................................... 6

    A.    Defendant's Motion to Compel Arbitration Should Be Denied Because the
           Arbitration Agreement Resulted from Defendant's Improper Communications
           with Represented Putative Class Members and Were Misleading ....................... 6

           1.    Standard of Review .................................................................................. 6

           2.    Defendant's Motion to Compel Arbitration Should Be Denied Because
                   the Arbitration Agreement Resulted from Defendant's Improper
                   Communications with Putative Plaintiffs in the *Canales* Lawsuit. ....... 8

           3.    Defendant's Alleged Arbitration Agreement is Unconscionable. ........ 13

    B.    Defendant's 12(b)(6) Motion to Dismiss Plaintiff's Collective/Class Allegations
           Should Be Denied. ............................................................................................. 15

           1.    The *Canales* Lawsuit Has Not Received a Final and Valid Judgment on
                   the Relevant Issue(s). ............................................................................ 18

           2.    Plaintiff Quevedo Did Not Have a Full and Fair Opportunity to Litigate
                   the Issues(s) and/or Fact(s) in the *Canales Lawsuit* ........................... 19

IV.   CONCLUSION ............................................................................................................. 21

**Cases**

*Adams v. Citicorp Credit Servs., Inc.*,
  93 F.Supp.3d 441 (M.D.N.C. 2015) ................................................................................. 18

*Agerbrink v. Model Serv. LLC*,
  No. 14 CIV. 7841 JPO JCF, 2015 WL 6473005 (S.D.N.Y. Oct. 27, 2015) ........................... 8

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ............................................................................................................. 7

*Arthur Anderson LLP v. Carlisle*,
  556 U.S. 624 (2009) ............................................................................................................. 6

*Balasanyan v. Nordstrom, Inc.*,
  No. 11-cv-2609, 2012 WL 760566 (S.D. Cal. Mar. 8, 2012) ........................................ 9, 10

*Billingsly v. Citi Trends, Inc.*,
  560 F.App'x 914 (11th Cir. 2014) ..................................................................................... 8, 9

*Brenner v. School House, Ltd.*,
  302 N.C. 207 (1981) ........................................................................................................... 13

*Brooklyn Savings Bank v. O'Neil*,
  324 U.S. 697 (1945) ........................................................................................................... 13

*Catlin v. U.S.*,
  324 U.S. 229 (1945) ........................................................................................................... 18

*Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc.*,
  807 F.3d 553 (4th Cir. 2015) ............................................................................................... 7

*Corrigan v. U.S.*,
  82 Fed.Cl. 301 (2008) ........................................................................................................ 17

*Degidio v. Crazy Horse Saloon & Restaurant Inc.*,
  880 F.3d 135 (4th Cir. 2018) ............................................................................................. 10

*Dillon v. BMO Harris Bank*,
  787 F.3d 707 (4th Cir. 2015) ............................................................................................... 7

*Erhardt v. Prudential Group*,
  629 F.2d 843 (2d Cir. 1980) ................................................................................................ 9

*First Options of Chicago, Inc. v. Kaplan*,
  514 U.S. 938 (1995) ............................................................................................................. 6

*Gilbert v. United States Bureau of Alcohol, Tobacco, Firearms and Explosives*,
  306 F.Supp.3d 776 (D. Md. Jan. 23, 2018), *aff'd*, 805 F.App'x 198 (4th Cir. 2020) ...... 16, 17

*Granite Rock Co. v. Int'l Bhd. Of Teamsters*,
   561 U.S. 287 (2010) ............................................................................................. 7

*Gulf Oil Co. v. Bernard*,
   452 U.S. 89 (1981) ............................................................................................... 8

*Hampton Hardware, Inc. v. Cotter & Co., Inc.*,
   156 F.R.D. 630 (N.D. Tex. 1994) ....................................................................... 9

*Hoffmann-La Roche Inc. v. Sperling*,
   493 U.S. 165 (1989) ............................................................................................. 8

*Hooters of Am., Inc. v. Phillips*,
   173 F.3d 933 (4th Cir. 1999) ............................................................................... 6

*Howsam v. Dean Witter Reynolds, Inc.*,
   537 U.S. 79 (2006) ............................................................................................... 6

*Hull v. Commissioner of Internal Revenue*,
   87 F.2d 260 (4th Cir. 1937) ............................................................................... 16

*In re Bridgestone/Firestone, Inc.*,
   333 F.3d 763 (7th Cir. 2003) ............................................................................. 16

*In re Currency Conversion Fee Antitrust Litig.*,
   361 F.Supp.2d 237 (S.D.N.Y. 2005) ..................................................... 8, 9, 10, 13

*In re Microsoft Corp. Antitrust Litig.*,
   355 F.3d 322 (4th Cir. 2004) ............................................................................. 17

*In re Sch. Asbestos Litig.*,
   842 F.2d 671 (3d Cir. 1988) ............................................................................... 9

*Jimenez v. Menzies Aviation Inc.*,
   No. 15-cv-02392-WHO, 2015 WL 4914727 (N.D. Cal. Aug. 17, 2015) ............... 9

*Kahan v. Rosenstiel*,
   424 F.2d 161 (3d. Cir. 1970) ............................................................................... 8

*Kirkpatrick v. Cardinal Innovations Healthcare Sols.*,
   2017 WL 3841858 (M.D.N.C. 2017) ............................................................ 18, 19

*Kleiner v. First Nat. Bank of Atlanta*,
   751 F.2d 1193 (11th Cir. 1985) ........................................................................... 9

*McNair v. Lend Lease Trucks, Inc.*,
   95 F.3d 325 (4th Cir. 1996) ............................................................................... 15

*Minnieland Private Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.*,
   867 F.3d 449 (4th Cir. 2017) ............................................................................... 7

iv

*Mitchell v. HCL America, Inc.*,
    190 F.Supp.3d 477 (E.D.N.C. June 2, 2016) ................................................................. 6, 7

*Montana v. United States*,
    440 U.S. 147 (1979) ................................................................................................... 19

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) ........................................................................................................ 7

*Murray v. United Food & Commercial Workers Int'l Union*,
    289 F.3d 297 (4th Cir. 2002) ...................................................................................... 13

*O'Connor v. Uber Tech., Inc.*,
    No. 13-cv-3826 EMC, 2013 WL 6407583 (N.D. Cal. Dec. 6, 2013) ...................................... 9

*O'Quinn v. TransCanada USA Services, Inc.*, 469 F.Supp.3d 591 (2020) ................................... 18

*OConner v. Agilant Solutions, Inc.*,
    444 F. Supp. 3d 593 (S.D.N.Y. Mar. 12, 2020) ............................................................... 14

*Ovis Matamoros Canales v. OPW Fueling Components LLC*,
    No. 5:22-cv-00459-BO-RJ (E.D.N.C.) .............................................................................. 1

*Randolph v. PowerComm Const., Inc.*,
    41 F.Supp.3d 461 (D. Md. Aug. 29, 2014) ..................................................................... 13

*Raymond James Fin. Servs., Inc. v. Cary*,
    709 F.3d 382 (4th Cir. 2013) ....................................................................................... 7

*Richmond, Fredericksburg & Potomac R. Co. v. Forst*,
    4 F.3d 244 (4th Cir. 1993) .......................................................................................... 15

*Rite Color Chemical Co. v. Velvet Textile Co.*,
    105 N.C.App. 14 (1992) ............................................................................................. 13

*Rowland v. Sandy Morris Fin. & Estate Planning Servs., LLC*,
    993 F.3d 253 (4th Cir. 2021) ....................................................................................... 7

*S.E.C. v. Resnick*,
    604 F.Supp.2d 773 (D. Md. Mar. 31, 2009) ................................................................... 19

*Saimplice v. Ocwen Loan Servicing Inc.*,
    368 F.Supp.3d 858 (E.D.N.C. 2019) ............................................................................. 16

*Salazar v. Driver Provider Phoenix LLC*,
    532 F.Supp.3d 832 (D. Ariz. Apr. 5, 2021) .................................................................... 14

*Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497 (2001) ........................................... 16

*Stafford v. Bojangles' Rests., Inc.*,
    123 F.4th 671 (4th Cir. 2024) ..................................................................................... 21

v

*Sydnor v. Conseco Fin. Servicing Corp.*,
    252 F.3d 302 (4th Cir. 2001)................................................................................ 6

*Tacoma Boatbuilding Co. v. Delta Fishing Co.*,
    1980 WL 98403, 28 U.C.C. Rep. Serv. (CBC) 26 (W.D. Wash. 1980)................................. 13

*Tillman v. Commercial Credit Loans, Inc.*,
    362 N.C. 93 (2008) ................................................................................ 13, 14

*United States v. Diebold, Inc.*,
    369 U.S. 654 (1962) ................................................................................ 7

*Volt Info. Scis., Inc. v. Stanford Univ.*,
    489 U.S. 468 (1989)................................................................................ 7

*Whitt v. Wells Fargo Financial*,
    664 F.Supp.2d 537 (D.S.C. Feb. 11, 2009)................................................................ 15

*Williams v. Securitas Sec. Serv. USA, Inc.*,
    2011 WL 2713818 (E.D. Pa. July 13, 2011)................................................................ 10

*Wingard v. Exxon*,
    819 F.Supp. 497 (D.S.C.1992)................................................................................ 13

**Statutes**

28 U.S.C. § 1291 ................................................................................ 18

28 U.S.C. § 1292(b) ................................................................................ 18

29 U.S.C. §§ 201 *et seq.*................................................................................ 1

9 U.S.C. § 2 ................................................................................ 6

9 U.S.C. § 4................................................................................ 6, 7

N.C. Gen. Stat. §§ 95-1 *et seq.*................................................................................ 1

**Other Authorities**

4 Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 11:65 (2002) ................................ 8

**Rules**

Fed. R. Civ. P. 12(b)(6)................................................................................ 1, 15

Fed. R. Civ. P. 23................................................................................ 1, 8

## I.     <u>INTRODUCTION</u>

Plaintiff Angel Quevedo Hernandez ("Plaintiff Quevedo"), on behalf of himself and all others similarly situated, by and through undersigned counsel, respectfully submits this Response in Opposition ("Response") to Defendant OPW Fueling Components LLC's ("Defendant") Motion to Compel Arbitration of Plaintiff Quevedo's Claims or in the Alternative to Dismiss His Collective and Class Action Claims ("Defendant's Motion") (Dkt. 19).

Defendant moves to compel arbitration of Plaintiff Quevedo's claims based on an agreement to waive his rights as a putative plaintiff under Fed. R. Civ. P. 23 ("Rule 23") to participate in a collective/class action Defendant unilaterally obtained without informing him that a pending collective/class action, *Ovis Matamoros Canales v. OPW Fueling Components LLC*, No. 5:22-cv-00459-BO-RJ (E.D.N.C.) ("*Canales*" or "*Canales* Lawsuit") had been filed less than two months earlier for the purpose of misleading Plaintiff Quevedo, his counsel, and the Court. Given the fatal defects in the formation of any such agreement, Plaintiff Quevedo respectfully requests the Court deny Defendant's Motion and permit him to continue litigating his claims in federal court.

Alternatively, Defendant moves to dismiss under Fed. R. Civ. P. 12(b)(6) Plaintiff's collective/class action claims under a theory of collateral estoppel, or issue preclusion, based on the still-pending *Canales* Lawsuit after the Court denied conditional FLSA collective and/or Rule 23 class certification. *See generally Canales* ECF No. 208. However, the Court's denial of certification in the *Canales* Lawsuit constitutes an interlocutory order, not a final judgment, on the issue of collective/class certification, and Plaintiff Quevedo has not yet had a full and fair opportunity to litigate his collective/class-wide claims alleging violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*, ("FLSA") and the North Carolina Wage and Hour Act, N.C. Gen. Stat. §§ 95-1 *et seq.* ("NCWHA"). Plaintiff Quevedo respectfully requests the Court deny Defendant's Motion to preclude Plaintiff Quevedo's class-wide allegations.

## II. RELEVANT FACTS & PROCEDURAL HISTORY

### A. The *Canales* Lawsuit and the Alleged Arbitration Agreements

On November 16, 2022, Ovis Matamoros Canales ("Canales") filed his initial Collective/Class Action Complaint on behalf of himself and others similarly situated. *Canales*, ECF No. 1. Within six (6) weeks of filing the Complaint, Defendant sent Plaintiff Quevedo, then an employee and putative collective/class member in the *Canales* Lawsuit, an offer letter ("Offer Letter") on January 3, 2023, discussing changes as a result of corporate restructuring and referencing arbitration a single time in three pages. Dkt. 20-1, Ex. 1. Defendant attached to the Offer Letter a copy of an Acceptance of Offer Letter ("Acceptance"), *id*., and an employment agreement ("Employment Agreement"), which contained provisions concerning arbitration, a jury trial waiver, and a collective/class action waiver (collectively, "the Arbitration Agreement"). Dkt. 20-1, Ex. 2. The Acceptance does not reference arbitration or the Arbitration Agreement. *See* Dkt. 20-1, Ex. 1. None of the alleged documents or their contents – the Offer Letter, the Acceptance, the Employment Agreement, or the Arbitration Agreement – refer to the pending collective/class action *Canales* Lawsuit. *See id*.; *see also* Dkt. 20-1, Ex. 2.

The Offer Letter states, "Our HR and management teams will be walking the floor and hosting informational sessions over the days and weeks to come to talk over this change with you, but if you have any immediate questions about anything in this letter, please let us know." Dkt. 20-1, Ex. 1. Defendant claims that Defendant held mandatory, continuous town hall meetings to "review[ ] the employment agreement and offer letter with employees, allow[ ] employees to ask questions, and discuss[ ] the transition to Dover Fueling Solutions." Dkt. 20-1, Ex. A, Declaration of Linda Townsley ("Townsley Decl."), ¶ 5. "Employees were also informed that if they had questions regarding the employment agreement or offer letter that they could come to human resources." *Id*. Defendant has not volunteered any details regarding what information was provided to employees, what questions were asked by employees, or what responses employees received while Defendant was "walking the floor" or "hosting information sessions." *See generally id*. Furthermore, Defendant previously admitted, "No one from OPW discussed this lawsuit with any of the current employees, or new hires, when communicating with those individuals about the

2

employment agreement." *Canales* ECF No. 142-1, Ex. A, Declaration of Andre Machado ("Machado Decl."), ¶ 3.

The Arbitration Agreement seemingly includes an opt-out provision, which requires employees to *first* sign the entire agreement and then *subsequently* email or mail Linda Townsley directly within fourteen (14) days of signing the entire agreement to opt-out of Paragraphs 5, 7, 8, and/or 9. *See* Dkt. 20-1, Ex. 2, ¶ 10. Defendant previously claimed in its brief supporting a Motion to Exclude from the Proposed Class and Putative Class Individuals Who Are Subject to Binding Arbitration that, "[. . .] OPW issued new employment agreements to all employees between January 2023 and February 2023, and all employees at that time signed those agreements." *Canales*, ECF No. 180, at *1. "All current employees have received and signed OPW's employment agreement, which includes the binding arbitration agreement." *Id*. Unsurprisingly, based on Defendant's representations (and one-sided communications), not a single employee ever successfully opted out of the Arbitration Agreement. *See generally id*. According to Defendant, Plaintiff Quevedo allegedly signed the Offer Letter and Employment Agreement, which contained the Arbitration Agreement, on January 10, 2023. *See* Dkt. 20, at *5.

However, Defendant did not inform the Court or Counsel for Canales ("Plaintiff's Counsel") in the *Canales* Lawsuit before distributing the alleged Arbitration Agreement to putative collective/class member employees. Instead, Defendant moved to dismiss Canales's individual claims (*see Canales* ECF No. 8; *see also Canales* ECF No. 98) and moved for partial judgment on the pleadings as to Canales's Rule 23 class claims pursuant to the North Carolina Wage & Hour Act ("NCWHA") on March 6, 2023 (*Canales* ECF No. 28). The Court subsequently adopted Magistrate Judge Robert Numbers II's memorandum and recommendation ("M&R") (*Canales* ECF No. 52) to dismiss Canales's Rule 23 class claims. Canales and Defendant significantly disputed Defendant's discovery obligations, culminating in an in-court hearing before Magistrate Judge Number on June 10, 2024. *See Canales* ECF No. 129, June 11, 2024 Scheduling Conference Transcript at 22:15-28:10. During the hearing, Defendant argued in opposition to Canales's request for putative class discovery but, despite its immediate and critical relevance to Defendant's position,

3

Defendant withheld information relating to its arbitration strategy from the Court or simply advising the Court regarding such "new" Employment Agreements. *See id.*

On July 10, 2024, Defendant served Canales with its First Set of Interrogatories, at least thirteen (13) out of twenty-four (24) (or more than half) of which related directly to Canales's class-wide allegations and/or Canales's anticipated motion for class certification (*see Canales* ECF No. 148-3, Ex. C-1, at **7-11), and with its First Set of Requests for Production of Documents, at least eight (8) out of twenty-three (23), not including subparts, of which related directly to Canales's class-wide allegations (*see Canales* ECF No. 148-3, Ex. C-2, at **41-55).

On September 3, 2024, Plaintiff's Counsel and Defendant's Counsel engaged in a meet and confer to discuss search terms for Defendant's Electronically Stored Information ("ESI") production. During this conversation, Defendant's Counsel indicated his belief that the Court's Scheduling Order was made in error and advised Plaintiff's Counsel of the intent to file a Motion for Reconsideration and for Protective Order (*Canales* ECF No. 142). Defendant's Counsel also finally revealed – **for the first time** – that Defendant had allegedly obtained executed arbitration agreements from putative class members barely two months after commencement of the *Canales* Lawsuit but almost two years into the *Canales* litigation. *See Canales* ECF No. 146, at *2. *See also generally Canales* ECF No. 146-1, Ex. A, Email Correspondence Between Counsel Regarding Arbitration Agreements. Defendant's Counsel explained that Defendant would not produce information related to putative class members who could not therefore join the action. *See generally, e.g.*, *Canales* ECF No. 142, Defendant's Memorandum in Support of Defendant's Amended Motion for Reconsideration and for Protective Order.

Multiple motions were filed in the *Canales* Lawsuit relating to the validity and enforceability of the alleged arbitration agreements. *See Canales* ECF Nos. 145, 146, 151, 156, Plaintiff's Motion to Enjoin Arbitration Agreements and for Protective Order (and related briefing); *see also Canales* ECF Nos. 176, 177, 181, 186, Defendant's Motion to Compel Arbitration of Opt-in Plaintiff Angel Quevedo Hernandez's Claims (and related briefing); *see also Canales* ECF Nos. 179, 180, 183, 185, Defendant's Motion to Exclude Individuals Bound by Arbitration (and related briefing). However, the Court noted in its denial of

4

Rule 23 class certification that the Court declined to reach "the question of what, if any, enforceability subsequently signed arbitration agreements between OPW and purported class members may have." *Canales* ECF No. 208, at *9 n. 2.

### B. Plaintiff's Class Allegations

On October 11, 2024, Plaintiff Angel Quevedo, then already a putative class member pursuant to Rule 23, filed a Notice of Consent to Join Suit for Opt-in Plaintiff Quevedo to join the *Canales* Lawsuit with respect to Canales's FLSA collective claims. *Canales* ECF No. 149. On December 5, 2024, Plaintiff Quevedo submitted as an opt-in plaintiff in the *Canales* Lawsuit a Declaration in Support of Plaintiff's Motion to Enjoin Arbitration Agreements and for Protective Order. *See Canales* ECF No. 166.

On December 9, 2024, Canales moved for Conditional Certification Pursuant to the Fair Labor Standards Act ("FLSA"), for Court-Authorized Notice to Be Issued Under 29 U.S.C. § 216(b), for Class Certification Under Fed. R. Civ. P. 23, and for Appointment of Class Counsel Under Fed. R. Civ. P. 23(g). *Canales* ECF No. 168. On March 25, 2025, the Court denied conditional collective certification under the FLSA and class certification under Rule 23. *Canales* ECF No. 208. The Court's denial of conditional collective and Rule 23 class certification effectively ended Plaintiff Quevedo's claims as a FLSA opt-in plaintiff or putative class member, although the *Canales* Lawsuit remains pending with concern to Canales's individual claims. On April 17, 2025, Canales moved for reconsideration of the Court's decision with respect to the denial of conditional collective and class certification. *Canales* ECF No. 220.

On April 17, 2025, Plaintiff Quevedo, formerly an FLSA opt-in plaintiff and putative class member under Rule 23 in the *Canales* Lawsuit, filed the present action to pursue his individual and class-wide claims against Defendant. *See* Dkt. 1.

5

III. **ARGUMENT**

    A. **Defendant's Motion to Compel Arbitration Should Be Denied Because the Arbitration Agreement Resulted from Defendant's Improper Communications with Represented Putative Class Members and Were Misleading.**

        1. Standard of Review

Section 2 of the Federal Arbitration Act ("FAA") states that a written arbitration agreement "shall be valid, irrevocable, and enforceable, **save upon such grounds as exist at law or in equity for the revocation of any contract**," 9 U.S.C. § 2 (emphasis added), including but not limited to "fraud, duress, and unconscionability." *See Sydnor v. Conseco Fin. Servicing Corp.*, 252 F.3d 302, 305 (4th Cir. 2001) (quoting the same).

When faced with a motion to compel arbitration, the court analyzes two gateway issues only. *Mitchell v. HCL America, Inc.*, 190 F.Supp.3d 477, 486 (E.D.N.C. June 2, 2016) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-84 (2006)). First, the court must determine **whether "a valid agreement to arbitrate exists between the parties."** *Mitchell*, 190 F.Supp.3d at 487 (quoting *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 938 (4th Cir. 1999)) (emphasis added). This inquiry is not confined to defects in contract formation but includes, again, "such grounds as exist at law or in equity for the revocation of any contract." *Id.* (quoting 9 U.S.C. § 2). Whether a party agreed to arbitrate is a question decided by state law governing contract formation. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). The contract enforceability principles of the forum state apply. *Arthur Anderson LLP v. Carlisle*, 556 U.S. 624, 630-31 (2009). Here, the Parties are not in dispute that North Carolina state law applies. Second, where the court concludes there is a contract, the court next asks whether "the specific dispute falls within the substantive scope of that agreement." *Id.*

The language of the FAA itself says the district court will enter an order to arbitrate only "upon being satisfied" there is an agreement to arbitrate. 9 U.S.C. § 4. **Although there is a legal presumption in favor of arbitrability, that presumption applies only when a "validly formed and enforceable arbitration agreement is ambiguous about whether it covers the dispute at hand," not when there is**

a question as to whether an agreement exists between the parties in the first place. *Granite Rock Co. v. Int'l Bhd. Of Teamsters*, 561 U.S. 287, 301-02 (2010); *see also Raymond James Fin. Servs., Inc. v. Cary*, 709 F.3d 382, 386 (4th Cir. 2013) (emphasis added). Compelling arbitration is appropriate under the FAA only when there is "a judicial conclusion" that there is a validly formed, express agreement to arbitrate. *Granite Rock*, 561 U.S. at 303. **After all, arbitration is "a matter of consent, not coercion**." *Volt Info. Scis., Inc. v. Stanford Univ.*, 489 U.S. 468, 479 (1989).

Here**, Plaintiff contests Defendant's position that a valid, enforceable agreement to arbitrate exists *at all* between Defendant and Plaintiff Quevedo, not the scope of arbitrability**, as the alleged Arbitration Agreement resulted from unsupervised, improper communications between Defendant and putative class members, creating unconscionable circumstances ripe for duress. *See infra* § III(A)(3).

If there is an unresolved dispute over the existence of an arbitration agreement, the court conducts a "restricted inquiry into factual issues." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983); *see also Dillon v. BMO Harris Bank*, 787 F.3d 707, 716 (4th Cir. 2015). Under the FAA, when the "making of the arbitration agreement … be in issue," the court "shall proceed summarily to the trial thereof." 9 U.S.C. § 4. Under this provision, courts employ the summary judgment standard and conduct a trial only when "there are 'genuine issues of material fact.'" *Rowland v. Sandy Morris Fin. & Estate Planning Servs., LLC*, 993 F.3d 253, 258 (4th Cir. 2021) (quoting *Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 564 (4th Cir. 2015)). "[T]he burden is on the defendant to 'establish[] the existence of a binding contract to arbitrate the dispute.'" *Id.* (quoting *Minnieland Private Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, 867 F.3d 449, 456 (4th Cir. 2017). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In making this determination, the court must view the inferences drawn from the underlying facts in the light most favorable to the non-moving party. *Mitchell*, 190 F.Supp.3d at 486 (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

2.      Defendant's Motion to Compel Arbitration Should Be Denied Because the
Arbitration Agreement Resulted from Defendant's Improper
Communications with Putative Plaintiffs in the *Canales* Lawsuit.

"Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100-01 (1981). *See also Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171 (1989) (applying same reasoning to collective actions). **A district court's "supervisory authority exists even before a class is certified."** *Agerbrink v. Model Serv. LLC*, No. 14 CIV. 7841 JPO JCF, 2015 WL 6473005, at \*3 (S.D.N.Y. Oct. 27, 2015) (collecting cases) (emphasis added). "**Putative class members' rights in litigation are protected as of the filing date of the complaint**." *In re Currency Conversion Fee Antitrust Litig.*, 361 F.Supp.2d 237, 251 (S.D.N.Y. 2005) (emphasis added). *See also Kahan v. Rosenstiel*, 424 F.2d 161, 169 (3d. Cir. 1970) (noting the same); 4 Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 11:65 (2002) ("It is well settled law that during the interim between filing of a class action and the 23(c)(1) determination by the court, it must be assumed to be a class action for purposes of dismissal or compromise under 23(e) unless and until a contrary determination is made under 23(c)(1)." (internal quotation marks and citations omitted)).

For example, in the context of FLSA actions, "the need for a district court to ensure that all parties act fairly is especially great during the early stages of FLSA litigation. Because formal notice to potential plaintiffs is sent only after conditional certification, 'pre-certification, *ex parte* communication with putative FLSA collective members about the case has an inherent risk of prejudice and opportunities for impropriety.'" *Agerbrink*, 2015 WL 6473005, at \*3 (quoting *Billingsly v. Citi Trends, Inc.*, 560 F.App'x 914, 921 (11th Cir. 2014)) (italics added). "Moreover, 'because FLSA plaintiffs must opt-in, unsupervised, unilateral communications with those potential plaintiffs can sabotage the goal of the FLSA's informed consent requirement by planting the slightest seed of doubt or worry through the one-sided, unrebutted presentation of 'facts.'" *Id.* (quoting *Billingsley*, 560 F.App'x at 924) (brackets omitted).

Among the Court's managerial responsibilities in collective action cases is "the protection of class members from 'misleading communications from the parties or their counsel.'" *In re Currency Conversion*,

8

361 F.Supp.2d at 252 (quoting *Erhardt v. Prudential Group*, 629 F.2d 843, 846 (2d Cir. 1980)). This duty

extends to communications that threaten the "choice of remedies" available to putative plaintiffs, including

collective action waivers. *Id*.; *see also Billingsley*, 560 F.App'x at 922 (holding that a district court did not

abuse its discretion in allowing "putative collective action members to join the lawsuit notwithstanding

their coerced signing of the arbitration agreements"); *Balasanyan v. Nordstrom, Inc.*, No. 11-cv-2609, 2012

WL 760566, at *4 (S.D. Cal. Mar. 8, 2012) (invalidating post-litigation arbitration agreements as to putative

class members). "A unilateral communications scheme, moreover, is rife with potential for coercion. If the

class and the class opponent are involved in an ongoing business relationship, communications from the

class opponent to the class may be coercive." *Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193, 1202

(11th Cir. 1985) (internal quotations, citations and bracket omitted).

   Indeed, when a defendant contacts putative class members for the purpose of altering the status of

a pending litigation, such communication is improper without judicial authorization. *See Hampton

Hardware, Inc. v. Cotter & Co., Inc.*, 156 F.R.D. 630, 632 (N.D. Tex. 1994) (noting that defendant's

communications affecting a class member's decision to participate in the litigation are improper); *see also

In re Sch. Asbestos Litig.*, 842 F.2d 671, 682 n. 23 (3d Cir. 1988) (listing cases where defendant "sought

either to affect class members' decisions to participate in the litigation or to undermine class plaintiffs'

cooperation with or confidence in class counsel"); *see also In re Currency Conversion Fee Antitrust Litig.*,

361 F.Supp.2d at 253. To allow defendants to induce putative class members into forfeiting their rights by

making them an offer and failing to disclose the existence of litigation would create an incentive to engage

in misleading behavior. *Balasanyan*, 2012 WL 760566, at *3.

   Moreover, "[c]ourts routinely exercise their discretion to invalidate or refuse to enforce arbitration

agreements implemented while a putative class action is pending if the agreement might interfere with

members' rights." *Jimenez v. Menzies Aviation Inc.*, No. 15-cv-02392-WHO, 2015 WL 4914727, at *6

(N.D. Cal. Aug. 17, 2015). *See also, e.g., O'Connor v. Uber Tech., Inc.*, No. 13-cv-3826 EMC, 2013 WL

6407583, at *7 (N.D. Cal. Dec. 6, 2013) (invalidating arbitration agreements imposed before class

certification where imposing agreement risked interference with putative [Rule 23] class members' rights);

*Balasanyan*, 2012 WL 760566, at \*\*1-2, 4 (declining to enforce individual arbitration agreement in class action where defendant's implementation of arbitration agreement was an improper class communication); *Williams v. Securitas Sec. Serv. USA, Inc.*, 2011 WL 2713818, at \*1 (E.D. Pa. July 13, 2011) (refusing to enforce arbitration agreement imposed during pendency of putative class action); *In re Currency Conversion*, 361 F.Supp.2d at 252-54 (refusing to enforce arbitration agreement instituted after putative class action was filed as it might mislead class members).[1]

Significantly, the Fourth Circuit affirmed a district court's denial of an FLSA defendant's motion to compel arbitration pursuant to agreements entered into with putative plaintiffs during pending litigation. *Degidio v. Crazy Horse Saloon & Restaurant Inc.*, 880 F.3d 135 (4th Cir. 2018). In *Crazy Horse*, the plaintiffs, who were entertainers and exotic dancers, filed a putative class action for underpayment violations against a bar and strip club. *Id.* at 138. The defendants engaged in prolonged litigation in the district court, including multiple rounds of summary judgment briefing to attempt to dismiss the action. *Id.* Toward the end of the discovery period, the defendant began entering into arbitration agreements with its entertainers by including those agreements within a "lease" document that entertainers were required to sign in order to perform at the club without notifying the court or plaintiffs' counsel. *Id.* at 138-39. The Fourth Circuit affirmed the district court's rejection of the defendant's attempt to enforce the agreements and compel arbitration, citing the likelihood that putative plaintiffs were either coerced or misled, noting that defendant's conduct would subvert the litigation process, and calling the resulting agreements a "sham." *Id.* at 140-44. The Fourth Circuit based its decision primarily on the misleading nature of the arbitration agreements, the timing of the defendant's motion, and "causing the court to spend unnecessary time and resources" before attempting to resort to arbitration when that forum appeared potentially more advantageous. *Id.*

---

[1] Defendant has noted elsewhere that the most apposite case law concerns agreements obtained during the pendency of the same lawsuit. *See* Dkt. 22, at \*9. While true, the case law cited here remains instructive regarding the invalid formation of a contract obtained in a one-sided, secretive way while misleading putative class members about their rights to participate in a pending collective/class action.

10

Here, the Court has the discretion to find that the Arbitration Agreement is invalid and unenforceable because it resulted from unilateral, furtive, improper communications between Defendant and the putative collective/class outside the Court's necessary supervision during the *Canales* Lawsuit. Defendant *admits* that it presented the Arbitration Agreement to employees beginning January 2023, after the *Canales* Lawsuit had already been filed alleging collective/class claims and at which time Plaintiff Quevedo was already a putative plaintiff/Rule 23 class member. Dkt. 20-1, Ex. A, Townsley Decl., ¶ 2. Defendant had one goal: to deprive putative plaintiffs of an opportunity to participate in the *Canales* Lawsuit by omitting any information relating to it. *See id*. Defendant did *not* inform the Court or Plaintiff's Counsel *before* communicating with Plaintiff Quevedo about signing the Arbitration Agreement.

Defendant states that the alleged Employment Agreement and Offer Letter were first presented to employees generally during mandatory town hall meetings in January 2023. Dkt. 20-1, Ex. A, Townsley Decl., ¶ 5. Defendant admits that it first presented the Arbitration Agreement to Plaintiff Quevedo on January 3, 2023. *Id*. ¶ 2.

After a three-paragraph introduction, the Offer Letter begins with a section entitled "What is NOT changing for me?" that assures Plaintiff Quevedo, "Your title, work location, base hourly pay rate or salary, assigned hours of work, job duties, supervisor, pay frequency, benefits, and bonus or incentive plan eligibility will not change." Dkt. 20-1, Ex. 1. The following section, entitled "What IS changing for me?", notifies Plaintiff Quevedo that a copy of a handbook will be provided and that an Employment Agreement is attached. *Id*. Defendant states, in bold, underlined text, "[Y]ou will be eligible for the following additional benefits[.]" *Id*. The Offer Letter then includes a list of benefits, all bold and underlined, including additional paid sick time, two additional paid holidays, an additional unpaid 30-minute break for hourly/non-exempt employees working over 10 hours in a day/shift, 8 hours of paid volunteer time each year, a new vacation policy, and, finally, the Employment Agreement. *Id*. The Employment Agreement subsection states:

> Attached to this letter, you'll find an Employment Agreement that includes some rules you will be expected to follow, including keeping company information confidential and returning any company property you have upon employment separation. It also includes a mutual agreement between the Company and you to

11

arbitrate any disputes that might arise related to your employment. Please read this
agreement carefully.

*Id*. The above text is the only reference to arbitration in the Offer Letter, buried deep in the text of the email behind a list of benefits without any distinguishment. *Id*. Moreover, nowhere in the Offer Letter does Defendant mention the *Canales* Lawsuit, how signing the Employment Agreement would affect Plaintiff Quevedo's right to participate in the *Canales* Lawsuit or provide contact information for Plaintiff's Counsel so that Plaintiff Quevedo could contact Plaintiff's Counsel to discuss its legal implications. *See id*.

Defendant has not fully disclosed *who* attended the mandatory town halls other than Linda Townsley. *See generally* Dkt. 20-1, Ex. A, Townsley Decl. Defendant has likewise chosen not to disclose *what* was communicated by Defendant to Plaintiff Quevedo during the mandatory town hall meetings other than vaguely admitting, "During the town hall meetings, human resources reviewed the employment agreement and offer letter with employees, allowed employees to ask questions, and discussed the transition to Dover Fueling Solutions. Employees were also informed that if they had questions regarding the employment agreement or offer letter that they could come to human resources." Dkt. 20-1, Ex. A, Townsley Decl., ¶ 5. Defendant did not provide details about what specifically was explained to Plaintiff Quevedo and other putative plaintiffs in the *Canales* Lawsuit during the town hall meeting, whether such explanation ever specifically discussed arbitration, whether Plaintiff Quevedo or other putative plaintiffs asked any questions during or after the town hall meeting, or what response to their questions they received or would have received had they asked. *See id*. However, Defendant previously admitted that all information relating to the *Canales* Lawsuit was entirely omitted. *See* ECF No. 142-1, Ex. A, Machado Decl., ¶ 3. This omission extends to the Arbitration Agreement itself, contained within the broader Employment Agreement. *See* Dkt. 20-1, Ex. 2.

Within six weeks of Canales filing a collective/class action complaint, Defendant quickly and surreptitiously distributed the alleged Arbitration Agreement to putative plaintiffs in the *Canales* Lawsuit, including former opt-in Plaintiff Quevedo. Dkt. 177-1, Ex. A, ¶ 5. The Court had no opportunity to monitor these communications, and Defendant did not inform putative plaintiffs, including Plaintiff Quevedo, of

the pending collective/class action *Canales* Lawsuit or direct them toward Plaintiff's Counsel to answer questions about how signing the Arbitration Agreement would impact their rights.

3.      Defendant's Alleged Arbitration Agreement is Unconscionable.

       "[E]quity may require invalidation of an arbitration agreement that is unconscionable." *Murray v. United Food & Commercial Workers Int'l Union*, 289 F.3d 297, 302 (4th Cir. 2002). Unconscionability is an affirmative defense, and the party asserting the defense bears the burden of proof. *Rite Color Chemical Co. v. Velvet Textile Co.*, 105 N.C.App. 14, 20 (1992). In assessing unconscionability, a court is to consider "all the facts and circumstances of a particular case." *Brenner v. School House, Ltd.*, 302 N.C. 207, 213 (1981). Unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party. *Wingard v. Exxon*, 819 F.Supp. 497, 502 (D.S.C.1992).

       A party asserting that a contract is unconscionable must prove both procedural and substantive unconscionability on a "sliding scale" that may favor one over the other. *Tillman v. Commercial Credit Loans, Inc.*, 362 N.C. 93, 102-03 (2008) (quoting *Tacoma Boatbuilding Co. v. Delta Fishing Co.*, 1980 WL 98403, 28 U.C.C. Rep. Serv. (CBC) 26, 37 n. 20 (W.D. Wash. 1980)). Procedural unconscionability involves "bargaining naughtiness" in the form of unfair surprise, lack of meaningful choice, and an inequality of bargaining power. *Id*. (citing *Rite Color*, 105 N.C. App. at 15).

       The FLSA was passed by Congress in direct response to the "unequal bargaining power between employer[s] and employee[s] […]." *Randolph v. PowerComm Const., Inc.*, 41 F.Supp.3d 461, 465 (D. Md. Aug. 29, 2014) (quoting *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 706 (1945)). The disparity in bargaining power between employers and employees certainly does not render any or all contracts or arbitration agreements between the two parties, regardless of circumstances, unenforceable as unconscionable, but it does contribute to the unconscionability of an agreement when the employer, which already has significantly more bargaining power than employees, further increases this disparity by withholding relevant, critical, material information. "A court may find unconscionability where a non-drafting party has no way of knowing a material fact." *In re Currency Conversion*, 361 F.Supp.2d at 251

Case 5:25-cv-00203-FL     Document 28     Filed 06/11/25     Page 19 of 30

(citations omitted). "A party acts unconscionably when it omits material information from a contract regarding the [other party]'s forfeiture of important protections." *Id.*

In *OConner v. Agilant Solutions*, the court found that the defendant's communications with putative plaintiffs were improper, misleading, and unenforceable as unconscionable because employees were asked to sign but defendant did not disclose that signing the agreements would result in losing their right to participate in the pending lawsuit. 444 F. Supp. 3d 593, 603 (S.D.N.Y. Mar. 12, 2020). The court exercised its supervisory authority and found that the agreements could not be enforced to preclude putative plaintiffs from participating in the lawsuit. *Id.*

Here, the Arbitration Agreement is procedurally unconscionable because Defendant unilaterally withheld relevant, material information about the current lawsuit from putative plaintiffs in the *Canales* Lawsuit, including Plaintiff Quevedo, when presenting Arbitration Agreements that were clearly intended to waive their legal rights to participate in said lawsuit. By withholding this material information, Defendant ensured that putative plaintiffs could not hear any other perspectives on the legal implications of signing the Arbitration Agreement except for its own and proffered the idea of a collective/class action lawsuit as exclusively an abstract concept rather than as an active, realized lawsuit alleging numerous wage and hour violations.[2]

Meanwhile, substantive unconscionability involves "harsh, one-sided, and oppressive contract terms." *Tillman*, 362 N.C. at 102-03. In *Salazar v. Driver Provider Phoenix LLC*, the court refused to enforce an agreement in part because the defendant did not provide an opt-out mechanism and conditioned employment on assent. 532 F.Supp.3d 832, 837-39 (D. Ariz. Apr. 5, 2021).

Here, the Arbitration Agreement is substantively unconscionable because it does not provide a legitimate opt-out provision. Rather, the Arbitration Agreement contains a provision that calls itself "Opt-

---

[2] To the extent Defendant believes that the knowledge of a pending lawsuit would make no significant difference to an employee asked to sign away their rights to participate in not only that lawsuit but any collective/class action, it makes little sense why Defendant therefore felt the need to hide its arbitration strategy from the Court such that the Court could ensure this information was properly communicated to them.

14

Out" but actually requires employees to first sign the Employment Agreement and Arbitration Agreement *in full*. Dkt. 20-1, Ex. 2. Only after signing the Employment Agreement can an employee, in theory, send an email or letter directly to Linda Townsley within fourteen (14) calendar days asking to opt out of the relevant arbitration and waiver provisions. *Id*. However, Defendant has repeatedly indicated that new and continuing employees since January 2023 have signed the Arbitration Agreement without a single successful opt-out. *See Canales* ECF No. 151, at **1-2 ("OPW distributed employment agreements to all employees between January 2023 and February 2023, and all employees employed at that time signed those agreements. OPW has continued to have its employees sign that employment agreement, and all current employees have signed it."); *see generally Canales* ECF No. 180. Moreover, the Offer Letter specifically states, "I understand that this offer is contingent upon my continuing ability to demonstrate that I am authorized to work in the United States, and my acceptance and execution of the Company's Employment Agreement, which is attached." Dkt. 20-1, Ex. 1. An opt-out provision that requires opting-in and is contradicted by a corresponding offer letter that indicates employment is contingent upon assent is not a real opt-out provision.

### B. Defendant's 12(b)(6) Motion to Dismiss Plaintiff's Collective/Class Allegations Should Be Denied.

Defendant alternatively moves to dismiss under Rule 12(b)(6) Plaintiff's collective/class allegations on the basis of collateral estoppel. "A motion under Rule 12(b)(6) is intended to test the legal adequacy of the complaint, and not to address the merits of any affirmative defenses." *Richmond, Fredericksburg & Potomac R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993). "At this stage of the litigation, a plaintiff's well-pleaded allegations are taken as true, and the complaint, including all reasonable inferences therefrom, is liberally construed in the plaintiff's favor. *Whitt v. Wells Fargo Financial*, 664 F.Supp.2d 537, 540 (D.S.C. Feb. 11, 2009) (citing *McNair v. Lend Lease Trucks, Inc.*, 95 F.3d 325, 327 (4th Cir. 1996)). "In the limited circumstances where the allegations of the complaint give rise to an affirmative defense, the defense may be raised under Rule 12(b)(6), but only if it clearly appears on the face of the complaint." *Richmond*, 4 F.3d at 250 (citations omitted). However, "[w]hen considering a Rule

15

12(b)(6) motion based on *res judicata* or collateral estoppel, the courts may 'take judicial notice of facts from a prior judicial proceeding' when the assertion of preclusion as a defense 'raises no disputed issue of fact.'" *Gilbert v. United States Bureau of Alcohol, Tobacco, Firearms and Explosives*, 306 F.Supp.3d 776, 783 (D. Md. Jan. 23, 2018), *aff'd*, 805 F.App'x 198 (4th Cir. 2020).

"Collateral estoppel" or "issue preclusion" prevents the re-litigation of issues of fact or law in order to promote judicial economy and to ensure the finality of judgments. *Gilbert*, 306 F.Supp.3d at 787. The party invoking collateral estoppel as an affirmative defense bears the burden of showing that the doctrine fairly applies. *See Hull v. Commissioner of Internal Revenue*, 87 F.2d 260, 262 (4th Cir. 1937).

Defendant mistakenly relies on *Saimplice v. Ocwen Loan Servicing Inc.* for its recitation of the elements of collateral estoppel. 368 F.Supp.3d 858, 865 (E.D.N.C. 2019). However, in *Saimplice*, the plaintiff's pending action challenged a final determination already reached during a foreclosure proceeding in *state court* and was thus precluded by collateral estoppel according to North Carolina state law. *See id.* As stated by the Court, "[f]ederal courts apply state law when evaluating the preclusive effects of a **prior state court judgment**." *Id.* (emphasis added). However, "[t]he preclusive effect of a judgment rendered by a federal court depends on national rather than state law." *In re Bridgestone/Firestone, Inc.*, 333 F.3d 763, 767 (7th Cir. 2003) (citing *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497 (2001)).

Here, both the *Canales* Lawsuit and the present action have been brought and litigated in federal court, not state court, and thus, the elements typically applied by the Fourth Circuit should likewise be applied here. Moreover, Defendant has not sufficiently met its burden in applying even the elements of its preferred test and instead leaves most of its argument to the imagination of the reader. *See* Dkt. 20, at **20-21. The only issues broadly identified by Defendant include whether proposed FLSA collective members are similarly situated and whether there is commonality among the proposed Rule 23 class. *See id.* at *20. However, Defendant does not identify or analyze any *specific* facts or issues – beyond the general issues of conditional collective/class certification – that it believes were thoroughly litigated and the Court conclusively resolved such that they preclude the instant matter. *See id.* at **20-21.

To apply collateral estoppel to an issue or fact in the Fourth Circuit, the proponent must demonstrate that (1) the issue or fact is identical to the one previously litigated; (2) the issue or fact was actually resolved in the prior proceeding; (3) the issue or fact was critical and necessary to the judgment of the prior proceeding; (4) the judgment in the prior proceeding is final and valid; and (5) the party to be foreclosed by the prior resolution of the issue or fact had a full and fair opportunity to litigate the issue or fact in the prior proceeding. *Gilbert*, 206 F.Supp.3d at 787 (citing *In re Microsoft Corp. Antitrust Litig.*, 355 F.3d 322, 326 (4th Cir. 2004)).

While the present action and the *Canales* Lawsuit admittedly share substantially similar facts and issues, the two matters are not entirely identical, as the period of time for which Plaintiff Quevedo seeks damages is not the same period of time as Canales nor does the putative class uniformly include the same individuals. *But see Corrigan v. U.S.*, 82 Fed.Cl. 301, 308 (2008). Indeed, Plaintiff Quevedo acknowledges that the proposed FLSA collective and five (5) proposed Rule 23 classes (i.e., the Proposed 30 Minute Auto Deduction Class, Proposed Time-Shaving Class 2, Proposed Off-the-Clock Work Class, Proposed Holiday and/or PTO Class, and Proposed Bonuses Class) appearing in the Complaint (Dkt. 1) closely resemble, but for the applicable time period, the proposed collective/classes in Canales's Reply in Support of Plaintiff's Motion for Conditional/Class Certification (*Canales* ECF No. 184).

However, the underlying facts and evidence supporting these proposed classes were not "actually resolved" with respect to Rule 23 class certification in the prior proceeding, as the Court focused instead on Canales's proposed common questions, finding that they were "good for only one employee at a time" and did not predominate over questions affecting individual members. *See Canales*, ECF No. 208, at **8-9. The Court further concluded that, "**absent more connective tissue tying the purported class together**, a class action is not superior to other methods for bringing [the *Canales* Lawsuit] to a fair and lawful end." *See id*. at *9 (emphasis added).

Most significantly, the fourth and fifth factors used by the Fourth Circuit do not support Defendant's assertion that Plaintiff's instant collective/class allegations are precluded, as there has not yet been a final judgment with regard to conditional collective/class certification in the *Canales* Lawsuit and

Canales has not yet had a full and fair opportunity to litigate the issues and facts in the prior proceeding. *See infra* §§ III(B)(1-2).

        1.     The *Canales* Lawsuit Has Not Received a Final and Valid Judgment on the Relevant Issue(s).

"A 'final decision' generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute judgment." *Catlin v. U.S.*, 324 U.S. 229, 233 (1945) (citation omitted). The Fourth Circuit uses a two-stage procedure for certification of collective actions. *Kirkpatrick v. Cardinal Innovations Healthcare Sols.*, 2017 WL 3841858, at *4 (M.D.N.C. 2017). During the first conditional certification stage, "the Court does not resolve factual disputes, decide substantive issues on the merits, or make credibility determinations." *Adams v. Citicorp Credit Servs., Inc.*, 93 F.Supp.3d 441, 454 (M.D.N.C. 2015). If a proposed collective action is denied certification, the original plaintiff may proceed with their claims on an individual basis. *See O'Quinn v. TransCanada USA Services, Inc.*, 469 F.Supp.3d 591, 604 (2020). Meanwhile, the denial of Rule 23 class certification is considered an interlocutory order, not a final judgment for the purposes of 28 U.S.C. § 1291. *See Microsoft Corp. v. Baker*, 582 U.S. 23, 36-41 (2017). Indeed, plaintiffs denied either FLSA conditional certification or Rule 23 class certification have no right to immediate interlocutory appeal save by the discretion of the district and appellate courts. *See* 28 U.S.C. § 1292(b).

Here, Canales was denied FLSA conditional certification and Rule 23 class certification, but, as Defendant well knows, the *Canales* Lawsuit continues with respect to Canales's individual claims. A motion for reconsideration of the Court's denial of conditional collective/class certification remains pending in the *Canales* Lawsuit, *Canales* ECF No. 220, and Canales will not have an opportunity to appeal the Court's decision until final resolution of the whole matter. As such, the Court's interlocutory order denying certification does not have a preclusive effect on Plaintiff Quevedo's right to assert a separate, if similar, proposed collective/class action on behalf of himself and others similarly situated.

2.       Plaintiff Quevedo Did Not Have a Full and Fair Opportunity to Litigate
the Issues(s) and/or Fact(s) in the *Canales Lawsuit*.

"For purposes of collateral estoppel, […] the key is the objective fullness and fairness of the *opportunity* to litigate." *S.E.C. v. Resnick*, 604 F.Supp.2d 773, 779-80 (D. Md. Mar. 31, 2009). "Where the non-moving party has had no opportunity to litigate particular issues, then collateral estoppel may not apply to them. *Id*. (citation omitted). "Likewise, where the opportunity to litigate was impeded by adjudicative procedures that were cursory, poor in quality, or otherwise unfair, then collateral estoppel ought not apply." *Id*. (citing *Montana v. United States*, 440 U.S. 147, 164 n. 11 (1979) ("Redetermination of issues is warranted if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation.")) (other citations omitted). "Conversely, where the non-moving party had the incentive to litigate vigorously in the prior proceeding, and was able in that proceeding to examine the evidence against him, present his own evidence, cross-examine witnesses, be represented by competent counsel, and otherwise enjoy the protections of due process as relates to the issue under dispute, he will generally be considered to have had a full and fair opportunity to litigate that issue for purposes of collateral estoppel." *S.E.C.*, 604 F.Supp.2d at 780 (citations omitted).

Canales, and Plaintiff Quevedo as an opt-in plaintiff in the *Canales* Lawsuit, did not have a full and fair opportunity to litigate all the relevant facts, evidence, and issues in that matter. The Court applied a heightened, intermediate standard atypical in the Fourth Circuit, *see Kirkpatrick*, 2017 WL 3841858, at *4, to the issue of FLSA conditional certification on the basis that the Scheduling Order had bifurcated discovery permitting discovery relating to "the factual circumstances underlying a potential motion for [class] certification." *See Canales* ECF No. 208, at *3. Indeed, the Court entered a Scheduling Order in the *Canales* Lawsuit on June 13, 2024, advising that discovery would occur in two phases and that the first phase of discovery was to involve subjects regarding whether Canales was "similarly situated" to the proposed class, whether there were common questions to the proposed class that predominate, hours worked by Canales and similarly situated employees, dates of employment for Canales and similarly situated

employees, and whether Defendant maintained uniform polices and practices applicable to the proposed class. *Canales* ECF No. 111, § 3.

However, Defendant vehemently opposed complying with its discovery obligations pursuant to the Court's Scheduling Order, including refusing to provide contact information for the putative class which would enable Canales to determine numerosity, typicality, or commonality relating to hours worked. *See Canales* ECF No. 144, at *11. The Parties' discovery disputes resulted in a plethora of motions with the Court, including a Joint Motion to Modify the Scheduling Order or, in the Alternative, Hold Discovery Completion and Dispositive Motion Deadlines in Abeyance seeking in part to extend the Phase I discovery deadline. *Canales* ECF No. 153.

With no ruling from the Court, Canales complied with the Court's Scheduling Order to protect his collective/class claims and filed his motion for conditional collective/class certification on December 9, 2024. *See Canales* ECF No. 167. In the supporting brief, Canales made clear the filing of his motion for conditional collective/class certification was not intended to waive his right to class-wide discovery, noting specifically:

> At the time of [ ] filing, the Parties have numerous pending discovery disputes. (listing pending motions relating to discovery). Therefore, to the extent the Court grants the Parties' Motion to Hold Deadlines in Abeyance (*Canales* ECF No. 153), allowing the Parties to continue engaging in discovery, [Canales] reserves the right to amend his motion for conditional and/or class certification. Specifically, should the Court grant the Parties' Joint Motion, [Canales] will pursue additional discovery to further substantiate Plaintiffs' Motion for Conditional Certification pursuant to the FLSA and Rule 23 Class under the NCWHA, requesting that [Canales] has an opportunity to file a supplemental brief.

*Canales* ECF No. 168, at *10 n.1. In support of his motion, Canales filed some evidence, including emails, policies, job descriptions, and handbook. *See Canales* ECF Nos. 168-2 *through* 168-29. However, given Defendant's opposition (*Canales* ECF No. 139), a large portion of class-wide discovery remained pending. *See also Canales* ECF Nos. 157, 159. The Parties remained unable to facilitate depositions of Canales or any of Defendant's witnesses due to scheduling conflicts. *See Canales* ECF No. 153 (requesting the Court extend the discovery deadline given substantial discovery remained).

On February 19, 2025, the Court entered several Orders, including an Order denying Canales's request to compel discovery as it related to putative class members, including the hours they worked, finding that it could not be compelled because it "f[ell] outside of Phase I discovery." *Canales* ECF No. 191, at **8-9. Meanwhile, the Court granted Defendant's motion to compel relating to items that fell within Phase I. *See Canales* ECF No. 188, at **8-9 (ordering Canales to provide estimated wages because they fell within Phase I); *id.* at **10-11, 13 (ordering Canales to respond to contention discovery interrogatory relating to the motion for conditional collective/class certification despite not requiring Defendant to produce records of the same). The Court also granted, in part, Defendant's motion for reconsideration of the Scheduling Order and for a protective order by denying Canales the benefit of Phase I discovery relating to putative class members. *See Canales* ECF No. 192, at *3. In other words, the Court retroactively required Canales to respond to Defendant's class-wide discovery requests while simultaneously denying Canales's right to the same. *See Canales* ECF Nos. 189, 191. As such, Canales did not have a full and fair opportunity to litigate the issues of conditional collective/class certification, or any of the myriad related issues and facts, with the benefit of class-wide discovery to which he was entitled by the Court's Scheduling Order

Furthermore, the Court relied significantly on the Fourth Circuit's decision in *Stafford v. Bojangles' Restaurants, Incorporated*, which was issued *after* Canales moved for conditional collective/class certification. *Compare Canales* ECF No. 167 (filed December 9, 2024) *with* 123 F.4th 671 (4th Cir. 2024) (issued December 17, 2024). Canales was significantly limited in his ability to fully address the impact and applicability of the *Stafford* decision in his reply in support of his conditional collective/class certification motion. *See Canales* ECF No. 184, at **11-13. Nonetheless, the Court relied primarily – nearly exclusively – on the *Stafford* decision in its denial of class certification despite the fact that Canales had not had a full and fair opportunity to completely brief the issue. *See Canales* ECF No. 208, at **6-9.

IV.   **CONCLUSION**

Based on the foregoing, Plaintiff respectfully requests the Court deny in its entirety Defendant's Motion.

Respectfully submitted, June 11, 2025.

*/s/ Gilda Adriana Hernandez*

Gilda A. Hernandez (NCSB No. 36812)
Hannah B. Simmons (NCSB No. 59579)
Matthew S. Marlowe (NCSB No. 60035)
Briahna B. Koegel (NCSB No. 62491)
**THE LAW OFFICES OF GILDA A.
HERNANDEZ, PLLC**
1020 Southhill Drive, Ste. 130
Cary, NC 27513
Phone: (919) 741-8693
Fax: (919) 869-1853
ghernandez@gildahernandezlaw.com
hsimmons@gildahernandezlaw.com
mmarlowe@gildahernandezlaw.com
bkoegel@gildahernandezlaw.com

*Attorneys for Plaintiff*

22

**<u>CERTIFICATE OF COMPLIANCE WITH L.R. 7.2(F)(2)(A) AND L.R. 7.2(F)(3)(A)</u>**

I hereby certify that this document is in compliance with Local Rules 7.2(f)(2)(A) and 7.2(F)(3)(A) does not exceed thirty (30) pages in length and contains fewer than 8,400 words, excluding the parts of the document that are exempted. This certificate was prepared in reliance on the word count feature of the word processing software used to prepare this document.

Respectfully submitted this June 11, 2025.

*/s/ Gilda Adriana Hernandez*
Gilda A. Hernandez (NCSB No. 36812)
Hannah B. Simmons (NCSB No. 59579)
Matthew Marlowe (NCSB No. 60035)
Briahna B. Koegel (NCSB No. 62491)
**THE LAW OFFICES OF GILDA A.
HERNANDEZ, PLLC**
1020 Southhill Dr., Ste. 130
Cary, NC 27513
Tel: (919) 741-8693
Fax: (919) 869-1853
ghernandez@gildahernandezlaw.com
hsimmons@gildahernandezlaw.com
mmarlowe@gildahernandezlaw.com
bkoegel@gildahernandezlaw.com

*Attorneys for Plaintiff*

23

**CERTIFICATE OF SERVICE**

I hereby certify that on June 11, 2025, the foregoing **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION OF PLAINTIFF ANGEL QUEVEDO HERNANDEZ'S CLAIMS OR IN THE ALTERNATIVE TO DISMISS HIS COLLECTIVE AND CLASS ACTION CLAIMS** was served in accordance with the Federal Rules of Civil Procedure on the following:

David I. Klass (NC Bar No. 53342)
Nicholas Hulse (NC Bar No. 54603)
Sharon Suh (NC Bar No. 51683)
**FISHER & PHILLIPS LLP**
227 West Trade Street, Suite 2020
Charlotte, NC 28202
Telephone: 704.334.4565
Facsimile: 704.334.9774
dklass@fisherphillips.com
nhulse@fisherphillips.com
ssuh@fisherphillips.com

*Attorneys for Defendant*

*/s/ Gilda Adriana Hernandez*
Gilda A. Hernandez (NCSB No. 36812)
Hannah B. Simmons (NCSB No. 59579)
Matthew Marlowe (NCSB No. 60035)
Briahna B. Koegel (NCSB No. 62491)
**THE LAW OFFICES OF GILDA A. HERNANDEZ, PLLC**
1020 Southhill Drive, Suite 130
Cary, NC 27513
Tel: (919) 741-8693
Fax: (919) 869-1853
ghernandez@gildahernandezlaw.com
hsimmons@gildahernandezlaw.com
mmarlowe@gildahernandezlaw.com
bkoegel@gildahernandezlaw.com

*Attorneys for Plaintiff*

24