# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## CIVIL ACTION NO. 5:25-CV-00203-FL

|  |  |
|---|---|
| ANGEL QUEVEDO HERNANDEZ, on behalf of himself and all others similarly situated, | ) ) ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| OPW Fueling Components, LLC, | ) |
|  | ) |
| Defendant. | ) |

## DEFENDANT'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION OF PLAINTIFF ANGEL QUEVEDO HERNANDEZ'S CLAIMS OR IN THE ALTERNATIVE TO DISMISS HIS COLLECTIVE AND CLASS ACTION CLAIMS

Nothing in Plaintiff's Opposition Brief provides a basis to defeat Defendant OPW Fueling Components LLC's ("OPW" or "Defendant") Motion to Compel Arbitration of Plaintiff Angel Quevedo Hernandez's Claims. Plaintiff Angel Quevedo Hernandez ("Hernandez") does not dispute in his Opposition Brief that the asserted claims in his Complaint are arbitrable. Hernandez instead argues that the arbitration provision in the Employment Agreement should be unenforceable because he claims, without substantiation of any kind, that the Employment Agreement was the result of improper communications with him and the arbitration provision is unconscionable. Likewise, Plaintiff's Opposition Brief further supports OPW's position that the collective and class action claims should be dismissed.

1. **Plaintiff cites to no evidence to support his argument that the Employment Agreement resulted from improper communication.**

As an initial point, Defendant incorporates its arguments set forth in Defendant's Response in Opposition to Plaintiff's Motion to Enjoying Employment Agreements and for Protective Order Regarding Defendant's Improper Communications with Putative Class Members (D.E. 22), as

Plaintiff's arguments that the Employment Agreement is invalid because it was implemented after the *Canales* lawsuit was filed track Plaintiff's Motion to Enjoin. Defendant will address only specific points raised in Plaintiff's Opposition Brief for the first time, or points that are particularly poignant.

Most importantly, Plaintiff provides no authority to invalidate an agreement signed prior to the current litigation. Rather, Plaintiff's Motion focuses entirely on case law addressing communications and agreements that occurred during the pending litigation. In *Salazar v. Driver Provider Phoenix, LLC*, 532 F.Supp.3d 832, 839 (D. Ariz. 2021), the court held "only that the Agreement is not enforceable against the putative Plaintiffs for this action only. The Court does not rule that Defendants are precluded from enforcing the agreement for other claims or future cases." Similarly, in *In re Currency Conversion*, 361 F.Supp.2d 237, 258 (S.D.N.Y. 2005), the court held "that because the non-putative class members agreed to arbitration *before* they became putative class members in this litigation, the arbitration clauses in their cardholder agreements can be enforced." The court also noted that "this Court's ruling is limited to the claims in this litigation, because it was information about this litigation that [defendants] omitted from their change of terms notices." *Id*.

Further, neither the U.S. Supreme Court nor the Fourth Circuit has held that arbitration agreements are *per se* invalid if implemented after the filing of a collective action complaint. Plaintiff's Opposition Brief argues that communications with putative class members are improper if they alter the status of pending litigation. However, Plaintiff cites to no evidence that the communications were coercive or misleading. *See Irvine v. Destination Wild Dunes Management, Inc.*, 132 F.Supp.3d 705, 706 (D.S.C. 2015) (holding that after a collective action has been filed and before a class certification motion has been ruled upon, an employer and/or its attorney are

not prohibited from meeting with members of a putative class, unless such communications are coercive or deceptive).

The Supreme Court has held that "orders restricting communications with putative class members must be 'based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties,' and should be 'carefully drawn' to 'limit[] speech as little as possible, consistent with the rights of the parties under the circumstances.'" *Dodona I, LLC v. Goldman, Sachs & Co.*, 300 F.R.D. 182, 185 (S.D.N.Y. 2014) (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101-102 (1981)). "[S]ome evidence beyond 'the mere possibility of abuses' is required to justify judicial intervention." *Agerbrink v. Model Service, LLC*, (quoting *Gulf Oil*, 452 U.S. at 104). Here, Plaintiff points to no such evidence.

Despite Plaintiff's unsubstantiated claim that "Defendant had one goal: to deprive putative plaintiffs of an opportunity to participate in the *Canales* Lawsuit by omitting any information relating to it," (D.E. 28), Plaintiff ignores the evidence supporting the fact that OPW implemented new employment agreements due to a corporate restructuring, unrelated to this matter, not specific arbitration agreements, distinguishing each of the cases cited by Plaintiff.

Plaintiff relies heavily on *Degidio v. Crazy Horse Saloon & Rest. Inc.*, 880 F.3d 135, 138 (4th Cir. 2018). The employer in *Degidio* did not begin implementing the arbitration program until the discovery period was drawing to a close, more than a year after the case was filed and after the employer had attempted multiple dispositive motions. The employer also moved for summary judgment on the merits of the case after the close of discovery but did not disclose the existence of the arbitration agreements. *Id.* It was not until the plaintiff moved for conditional certification under the FLSA that the employer finally notified the court of the existence of arbitration

agreements, seventeen months after the filing of the complaint.[1] *Id.* at 139. The Fourth Circuit found the employer's maneuvering to be "disdainful of orderly judicial process" and that the employer "pushed the case further and further away from the FAA's mandate of helping parties resolve disputes expeditiously." *Id.* at 138, 142. Here, the Employment Agreement was signed by Hernandez before this case was filed, OPW immediately sought to enforce Hernandez's Employment Agreement, and even if the Court were to examine OPW's litigation conduct in the *Canales* Lawsuit, OPW did not litigate that case in a similar fashion to *Degidio*.

Another differentiating factor between *Degidio* and the instant case is the actual terms of the agreements. The employer's agreements in *Degidio* "painted a false picture of the [potential class members'] legal posture. Specifically, the agreements suggested that the [potential class members'] ability to keep tips and set their own schedules was a result of their designation as independent contractors, and that this designation would be imperiled if the [they] joined Degidio's suit." *Id.* at 142. The employer also made "false representations" to potential class members about the consequence of participating in the lawsuit. *Id.* Again, there is nothing remotely comparable in this case. In fact, OPW did not discuss the *Canales* lawsuit or this lawsuit with its employees during the implementation process.

Plaintiff provides no evidence of "improper communications" to support a "a clear record and specific findings" that necessitate a limitation on communications, Plaintiff's argument should be rejected.

---

[1] By contrast, OPW disclosed the existence of its arbitration program to the Court in the *Canales* Lawsuit before Plaintiff moved for condition certification and near the beginning of the Phase 1 discovery period, before any significant discovery had occurred.

### 2. The Arbitration Provision is Not Unconscionable

Plaintiff argues that the Employment Agreement is procedurally unconscionable because "Defendant unilaterally withheld relevant, material information about the current lawsuit from putative plaintiffs in the *Canales* Lawsuit," relying on *O'Conner v. Agilant Solutions*, 444 F.Supp.3d 593 (S.D.N.Y. 2020). In *O'Conner v. Agilant Solutions, Inc.*, 444 F.Supp.3d 593 (S.D.N.Y. 2020), the employer rolled out arbitration agreements *after* the plaintiffs had filed their motion for condition certification. The plaintiffs also presented evidence that "strongly suggested" that the sole reason for the arbitration agreements were to preclude employees from participating in this litigation. *See id*. Further, in one instance, an employee requested thirty days to review the arbitration agreement before signing it, and the employer suggested that they would not allow the employee to work until the agreement was signed. For these reasons, the court in *O'Conner* found that the communications with putative plaintiffs were misleading and coercive. Here, OPW's agreements contain an opportunity to opt-out of the agreements. Further, OPW implemented the arbitration agreements as part of a broader corporate restructuring, and the there is no evidence of any misleading or coercive communications.

Plaintiff argues the Employment Agreement is substantively unconscionable because it does not provide a "legitimate opt-out provision." The Employment Agreement provides an opportunity for employees to opt-out of the binding arbitration provision and/or the collective and class action waiver by simply sending an email to the provided email address. While Plaintiff argues the opt-out provision is somehow illusory because no employee attempted to exercise the opt-out provision, Plaintiff presents no evidence to support this argument. Plaintiff also argues that the Offer Letter somehow contradicts or invalidates the opt-out provision in the Employment Agreement because the Offer Letter states, "I understand that this offer is contingent upon…my

acceptance and execution of the Company's Employment Agreement, which is attached." *See* ECF No. 20-1, Ex. 1. Defendant fails to see how this contradicts or invalidates the opt-out provision in the Employment Agreement. The Offer Letter simply requires that employees accept and execute the Employment Agreement, which includes the opt-out provision, not that employees somehow waive the opt-out provision. Accordingly, Plaintiff has presented no evidence to support a finding that the Employment Agreement is unconscionable.

3. **Hernandez's Class and Collective Claims Should be Dismissed.**

Plaintiff admits that the present action and the *Canales* Lawsuit share substantially similar facts and issues but argues the two matters are not identical because "the period of time for which Plaintiff seeks damages is not the same period of time as Canales nor does the putative class uniformly include the same individuals." Plaintiff's argument is misleading, however, because the *only* difference between the putative class in this case and that in the *Canales* Lawsuit is that they cover different, but overlapping, periods of time due to when the lawsuits were filed. In all other respects, the classes are the same: there is no factual distinction between the two cases. In *Corrigan v. U.S.*, relied upon by Plaintiff, the court explained that "[c]ollateral estoppel also may apply in instances when there is a lack of total identity between the events giving rise to the first and second lawsuits, **for example when the events raised in the second lawsuit are the same or substantially similar to those that gave rise to the first suit, but took place at a different time.**" 82 Fed.Cl. 301, 307 (Fed. Claims 2008) (emphasis added). In *Corrigan*, the plaintiff sought compensation for overtime under the FLSA or the FEPA in a lawsuit filed in 2004 and the court concluded he was not entitled to overtime compensation. *See id*. at 303. The plaintiff filed a different lawsuit in 2007, again seeking overtime under the FLSA and the FEPA, albeit for a different time period. *See id*. The court dismissed the case under the doctrine of issue preclusion.

*See id*. at 312. Plaintiff points to no changes in the factual landscape or legal landscape here. Accordingly, it is immaterial that Plaintiff seeks to recover damages for a different period of time than Canales.

Plaintiff also argues that the denial of the motion for conditional certification in the *Canales* Lawsuit is not a final order for purposes of collateral estoppel because a motion for reconsideration is pending and the decision cannot be appealed until final resolution of the *Canales* Lawsuit. However, "[t]he pendency of an appeal does not preclude the application of collateral estoppel." *In re Keck, Mahin & Cate*, 237 B.R. 430, n. 6 (N.D.Ill. 1999) (citing *Amcast Indus. Corp. v. Detrex Corp.*, 45 F.3d 155, 160 (7th Cir. 1995), *cert. denied*, 515 U.S. 1103 (1995)). Therefore, "although the District Court certifying the class is currently on appeal, the Order is still final for purposes of collateral estoppel and *res judicata*. It is well-established that the pendency of an appeal does not suspend the operation of an otherwise final judgment as *res judicata* or collateral estoppel, 'unless the appeal removes the entire case to the appellate court and constitutes a proceeding de novo.'" *In re Livaditis*, 122 B.R. 330, 335 (N.D.Ill. 1990) (citing B Moore's Federal Practice ¶ 0.416[3] at 522–21; *Jennings v. Roscrow,* No. 85-c-7244, 1987 WL 11341 (N.D.Ill. May 22, 1987) ("The well-settled federal rule is that a trial court may apply collateral estoppel even while judgment is pending on appeal.")). Accordingly, the Court's Order denying certification in the *Canales* Lawsuit can serve as a final order for purposes of collateral estoppel.

Finally, Plaintiff argues that he did not have a full and fair opportunity to litigate the issues related to class certification in the *Canales* Lawsuit, asking this Court to revisit the Court's decisions in the *Canales* Lawsuit. Specifically, Hernandez takes issue with this Court applying a heightened, intermediate standard, when reviewing conditional certification in the *Canales* Lawsuit because discovery had occurred prior to motion for certification. The plaintiff in the

*Canales* Lawsuit has raised this same argument in his motion for reconsideration, and this is simply an attempt at a third bite at the apple. Plaintiff also argues that Canales did not have a full and fair opportunity to litigate the issues of conditional certification due to the Court's decision on several discovery related orders. Again, this is not the appropriate venue for Plaintiff to seek to relitigate those issues.

Similarly, Plaintiff argues that he was not given a full and fair opportunity to litigate the issues related to class certification in the *Canales* Lawsuit because the Fourth Circuit's decision in *Stafford v. Bojangles' Restaurants, Inc.* was issued after Canales moved for conditional collective/class certification. However, Plaintiff addressed the impact and applicability *Stafford* at the outset of his Rule 23 class certification in his reply brief. *See Canales* Lawsuit, D.E. 184 at 11-13.

While Plaintiff cites to *S.E.C. v. Resnick*, 604 F.Supp.2d 773 (D.Md. 2009), Plaintiff seems to ignore that court's guidance. The court was clear in *Resnick* that

> [defendant] seems to understand the phrase to refer to the subjective fullness and fairness of specific outcomes of litigation, such as trial results and specific rulings made during trial, issues which he is currently contesting through his appeal in the Second Circuit. For purposes of collateral estoppel, however, the key is the objective fullness and fairness of the *opportunity* to litigate.

*Id*. 604 F.Supp.2d at 779. Here, Plaintiff takes issue with the fullness and fairness of specific outcomes and specific rulings in the *Canales* Lawsuit in a subjective fashion, without presenting any evidence that there was a lack of an opportunity to litigate the relevant issues and facts in the *Canales* Lawsuit. In other words, a party does not have a full and fair opportunity to litigate matters simply because that party lost the argument the first time. Accordingly, Plaintiff has failed to establish any basis for finding he did not have the opportunity to fully and fairly litigate issues related to class certification in the *Canales* Lawsuit.

**Conclusion**

OPW has shown that Plaintiff Hernandez signed the Employment Agreement containing the arbitration provision, and that the claims Hernandez seeks to prosecute in this matter are covered by the arbitration provision. Accordingly, for the reasons set forth in Defendant's Memorandum in Support of its Motion to Compel Arbitration, and as set forth above, OPW respectfully requests that the Court compel Hernandez to arbitrate his claims against it and stay his clams in this lawsuit pending arbitration.

If the Court were to deny OPW's request to compel Hernandez to arbitrate his claims, OPW requests that the Court dismiss Hernandez's class and collective claims, as this Court's decision in the *Canales* matter precludes Hernandez from relitigating the same issues previously decided by this Court.

Dated this 25th day of June, 2025.        Respectfully submitted,

By:    */s/ David I. Klass*
        David I. Klass (NC Bar No. 53342)
        Nicholas Hulse (NC Bar No. 54603)
        Sharon Suh (NC Bar No. 51683)
        **FISHER & PHILLIPS LLP**
        227 West Trade Street, Suite 2020
        Charlotte, NC 28202
        Telephone: 704.334.4565
        Facsimile: 704.334.9774
        E-mail: dklass@fisherphillips.com
        E-mail: nhulse@fisherphillips.com
        E-mail: ssuh@fisherphillips.com
        *Counsel for Defendant OPW Fueling*
        *Components LLC*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**CIVIL ACTION NO. 5:25-CV-00203-FL**

| | |
|---|---|
| ANGEL QUEVEDO HERNANDEZ, on behalf of himself and all others similarly situated, | ) ) ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| OPW Fueling Components LLC, | ) |
| | ) |
| Defendant. | ) |

I hereby certify that on June 25, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send electronic notice to Plaintiff's counsel, Gilda A. Hernandez via email to ghernandez@gildahernandezlaw.com as well as to any other counsel of record in this case.

I hereby certify, pursuant to LR 7.2, that the foregoing Memorandum complies with the applicable page limit (10 pages) set forth in LR 7.2(f)(2)(C), and contains fewer than 2,800 words, as set forth in LR 7.2(f)(3)(C).

Respectfully submitted,

By:     */s/ David I. Klass*
David I. Klass (NC Bar No. 53342)
**FISHER & PHILLIPS LLP**
*Counsel for Defendant OPW Fueling Components LLC*