IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:25-CV-203-FL

| | |
|---|---|
| ANGEL QUEVEDO HERNANDEZ, on behalf of himself and all others similarly situated,<br><br>     Plaintiff,<br><br> v.<br><br>OPW FUELING COMPONENTS LLC,<br><br>     Defendant. | ORDER |

This matter is before the court upon plaintiff's motions for equitable tolling (DE 8) and to enjoin operation of new employment agreements and for protective order (DE 11), and defendant's motion to compel arbitration (DE 19). The motions are fully briefed, and the issues raised are ripe for decision. For the following reasons, plaintiff's motion for tolling is granted, and his other motion is denied. Defendant's motion to compel arbitration is granted.

## STATEMENT OF THE CASE

Angel Quevedo Hernandez commenced this proposed collective and class action on April 17, 2025, asserting claims for 1) violation of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"); and violation of the North Carolina Wage and Hour Act, N.C. Gen. Stat. § 95-25.6 et seq. ("NCWHA"). Plaintiff seeks class certification, backpay, and liquidated damages, plus fees and costs.

Plaintiff filed the instant motion for equitable tolling on April 22, 2025, and his motion to enjoin or render unenforceable employment agreements, with specific reference to certain clauses,[1] a day later, on April 23, 2025. The latter motion also seeks defendant to provide putative class members' contact information, copies of materials sent or received concerning the subject employment agreement, this court's authorization for plaintiff to issue corrected notice in form lodged on the docket at entry no. 12-1, and prohibition on defendant's contact with putative class members related to litigation.

On May 22, 2025, defendant filed its motion to compel arbitration. In support of that motion and in defense of plaintiff's motion to enjoin and for protective order, defendant relies upon sworn written testimony of its director of human resources, Linda Townsley ("Townsley").

The court's attention has been directed by the parties to <u>Ovis Matamoros Canales v. OPW Fueling Components, LLC</u>, Case No. 5:22-cv-00459-BO-RJ (the "Canales action"), also pending in this district.

## STATEMENT OF FACTS

The facts alleged in the complaint are as follows. Defendant is a Delaware corporation, which "oversees the manufacturing of fuel transfer, containment, and dispensing products and systems for use in retail and commercial applications." (Compl. (DE 1) ¶¶ 14–15). Defendant produces a variety of devices designed to handle gasoline, diesel, and other fuels. (<u>Id.</u> ¶ 36). Plaintiff is a resident of Johnston County, North Carolina, who worked for defendant as an "operator, team lead," and as a "technician." (<u>Id.</u> ¶ 18). To date, one opt-in plaintiff has joined the FLSA collective action: Estrella Solis ("Solis"), as next of kin for her husband, Narciso Solis,

---

[1] Clauses 5 through 10 of a new employment agreement, in this instance requested by letter dated January 3, 2023, to be signed by plaintiff, are the focus of plaintiff's motion. Those contested clauses variously advance on defendant's behalf plaintiff's agreement to arbitration, waiver of trial by jury, collective and class action waivers, and provide specified opt-out rights. (Townsley Decl. (DE 20-1) 13–15).

2

who worked as a machine operator for defendant from 2015 to 2021. (Consent to Become Party Pl. (DE 3)).

Defendant's North Carolina location specializes in "above- and below-ground retail fueling." (Id. ¶ 37). Plaintiff worked for defendant from October 2011 through September 2024. (Id. ¶ 39). His duties included ensuring smooth operation of the production line, setting up and starting the line, overseeing production, training employees, maintaining cleanliness, disassembling extractor heads, performing quality control, and ensuring the station was operating in compliance with standards. (Id. ¶¶ 41–43).

The FLSA collective action is a class of employees who were, are, or will be employed by defendant as manufacturing employees at any time within three years of the commencement of this action and who did not receive compensation for all hours worked. (Id. ¶¶ 71–80).

Broadly, plaintiff alleges that defendant failed to compensate him for all hours worked, deprived him of scheduled meal breaks, and failed to pay him promised bonuses despite his protests. (Id. ¶¶ 47–65). Plaintiff estimates his liquidated damages, in the form of lost wages, at $35,356.64, and the proposed class's lost wages as exceeding $5 million. (Id. ¶¶ 67–68). Plaintiff estimates his unpaid overtime wages as $14,211.60, and the proposed collective action members' unpaid overtime wages as exceeding $5 million. (Id. ¶¶ 69–70).

## COURT'S DISCUSSION

A. Motion for Equitable Tolling

The first dispute between the parties is whether plaintiff is entitled to the tolling of the statute of limitations. This lawsuit was preceded by the Canales action, a similar action that raised the same claims against the same defendant. The Canales action was initiated by complaint filed November 16, 2022, followed by amended complaint filed January 27, 2023, and then second

3

amended complaint filed April 4, 2024. Solis, opt-in plaintiff here, opted into the Canales action January 29, 2024. Plaintiff here also consented to join the Canales action on October 11, 2024, as an opt-in plaintiff. On March 25, 2025, the court in the Canales action denied motion for conditional certification of an FLSA collective action, and this lawsuit, initiated by complaint filed April 17, 2025, followed.

Plaintiff preemptively seeks to apply the doctrine of equitable tolling to the FLSA claims brought by plaintiff and opt-in plaintiff to the dates on which they joined the Canales action, and their NCWHA claim to the date on which the original complaint in the Canales action was filed. Plaintiff seeks equitable tolling only as to those claims, and expressly disavows tolling as to any other putative class members. (Tolling Reply Br. (DE 26) 2).

The parties agree as to most issues. Indeed, the only dispute between them is whether the tolling period for plaintiff's NCWHA claim should begin as of November 16, 2022, the date of filing of the original complaint in the Canales action, or the April 4, 2024, date of filing of the second amended complaint. (See Tolling Opp'n Br. (DE 23) 2, 4–5).[2]

The filing of a class action tolls the statute of limitations as to all asserted members of the class until class certification is denied. Bridges v. Dep't of Md. State Police, 441 F.3d 197, 210–11 (4th Cir. 2006). This rule applies to plaintiff's second claim under the NCWHA. See id. Defendant does not dispute this point, (Tolling Opp'n Br. at 5), and merely argues that tolling should begin only as of the filing of the second amended complaint in the Canales action, not the filing of the original complaint.

Defendant argues that a magistrate judge issued a memorandum and recommendation ("M&R") in the Canales action suggesting that the NCWHA claim be dismissed. However, this

---

[2] Defendant references filing of corrected second amended complaint on April 19, 2024, which is not the operative filing date. (Tolling Opp'n Br. at 5). The second amended complaint was filed on April 4, 2024.

4

M&R was rejected as moot by the district judge in light of the filing of the second amended complaint. Defendant notes that, to benefit from the rule stated in Bridges, the claims of a subsequent class action must be similar enough to the claims brought by the prior failed class action that a defendant effectively is put on notice of the later plaintiff's potential claims. See Davis v. Bethlehem Steel Corp., 769 F.2d 210, 212 (4th Cir. 1985); Arivella v. Lucent Techs., Inc., 623 F. Supp. 2d 164, 180 (D. Mass. 2009); see also Crown, Cork & Seal Co., Inc. v. Parker, 462 U.S. 345, 354–55 (1983) (Powell, J., concurring) ("the rule should not be read, however, as leaving a plaintiff free to raise different or peripheral claims following a denial of class status"). Examination of complaint in this case and the original complaint in the Canales action reveals that their respective NCWHA allegations are substantially similar, and that the former closely tracks the latter, often verbatim. (See Compl. ¶¶ 51–68, 81–88, 98–115; Compl., Canales v. OPW Fueling Components LLC, No. 5:22-cv-459-BO (E.D.N.C. Nov. 16, 2022) DE 1). Thus, tolling from the date of the original complaint in the Canales action, not the second amended complaint, is proper.

Meanwhile, an FLSA collective action is considered commenced, for a named plaintiff, upon the filing of the complaint, 29 U.S.C. § 256(a). Such action is considered commenced for an opt-in plaintiff as of the date the party files his or her opt-in notice. Id. § 256(b). Thus, the statute of limitations applicable to the FLSA claim here was tolled as of the date of opt-ins, October 11, 2024, for plaintiff, and January 29, 2024, for opt-in plaintiff, until the court in the Canales action denied certification on March 25, 2025. Thus, the undisputed portion of plaintiff's first motion, that the court toll the statute of limitations on their FLSA claim between these dates, is proper under governing law. Id.

Plaintiff's motion for equitable tolling thus is granted, and the statute of limitations is tolled for plaintiff's FLSA claim from October 11, 2024, to March 25, 2025, and for opt-in plaintiff's FLSA claim from January 29, 2024, to March 25, 2025. The statute of limitation for plaintiff's NCWHA claim is tolled from November 16, 2022, through March 25, 2025.

B.   Motion to Enjoin Employment Agreements and For Protective Order

Finally, plaintiff seeks to enjoin the enforcement of the employment agreements of all putative class members, specifically clauses 5-10 thereof, as improperly coercive, to issue a corrective notice to all putative class members who signed the agreement, and to grant a protective order restricting defendant's future communications with putative class members.

1.   Enforcement of Agreements

Plaintiff's arguments regarding unenforceability made in this motion are distinct from those made in their opposition to defendant's motion to compel arbitration and discussed below. The court therefore addresses them separately here.

Plaintiff develops arguments on mistake and fraud under North Carolina law, as well as arguments about abuse under Federal Rule of Civil Procedure 23(d).

Rule 23(d) gives the court authority to impose conditions on the parties to protect class members. Fed. R. Civ. P. 23(d). Courts have used this authority to void arbitration clauses and releases. See, e.g., Chen-Oster v. Goldman, Sachs & Co., 449 F. Supp. 3d 216, 255–64 (S.D.N.Y. 2020) (collecting and discussing in detail cases from across the country).

Though the Fourth Circuit has not announced a governing standard, both parties cite to, and rely upon, the factors enumerated in Chen-Oster, 449 F. Supp. 3d 216, in that court's thorough

6

and persuasive analysis.³ The court therefore addresses this question under those factors. The factors are 1) the relative vulnerability of the putative class members; 2) evidence of actual coercion or conditions conductive to coercion; 3) whether the defendant targeted putative class members purposefully to narrow the class; 4) whether the arbitration agreement was unilaterally imposed; and 5) evidence of misleading conduct, language, or omissions, including the extent to which the agreement mentions the existence of the putative class action. Id. at 263–64 (distilling these factors after a meticulous canvass of nationwide authority); see, e.g., Monroe v. Stake Ctr. Locating, LLC, --- F. Supp. 3d ---, 2025 WL 941310, at *4 (E.D. Va. 2025) (applying these factors).

First, the putative class members are not particularly vulnerable. Plaintiff asserts that the putative class members are hourly workers who are generally Spanish-speaking and have limited education. (Pl's Enjoinment Br. (DE 12) 8); see Monroe, --- F. Supp. 3d ---, 2025 WL 941310, at *4 (finding that similar facts weighed in favor of abuse). However, defendant presents unrebutted evidence that it supplied the employment agreement in Spanish and provided Spanish translators. (See Townsley Enjoin Decl. (DE 22-1) ¶¶ 3–4, 6). This factor does not weigh in favor of abuse.

Second, plaintiff presents no evidence of actual coercion or of conditions conducive thereto. Plaintiff's arguments here are rehashes of his points about lack of knowledge of what was said in the employment agreement meetings, and about the lack of an opt-out provision, as made in opposition to defendant's motion to compel arbitration below. As below, the former point is speculation without any evidentiary support, and the latter is incorrect.

---

³ Chen-Oster examined Degidio v. Crazy Horse Saloon & Rest. Inc., 880 F.3d 135, 144 (4th Cir. 2018), as part of its discussion. However, Crazy Horse's analysis was particular to its facts and did not announce a general legal standard that governs the issues presented by this motion. See generally id.

7

Third, defendant could not have acted to purposefully narrow the class in this case, because the employment agreements were presented and executed years before this case was filed. The court agrees with a case both parties cite, for different propositions, that plaintiff's only evidence on this point is the agreements' timing relative to the first action, and that this is insufficient alone. See Salazar v. Driver Provider Phoenix LLC, 532 F. Supp. 3d 832, 838 (D. Ariz. 2021)

Fourth, the employment agreement conferred benefits on employees even if they opted out of the arbitration clause, and the letter outlining the agreement explicitly notified employees that the agreement contained an arbitration clause. (See Townsley Enjoin Decl. Ex. 1 (DE 22-1) 7). Plaintiff's argument that the agreement was coercive because it did not mention the Canales action is unavailing because, put simply, this case is not the Canales action. Further, plaintiff's primary support, Monroe, is distinguishable. There, the defendant misleadingly hid an arbitration agreement in a communication that appeared to be a mere conferral of a bonus. See Monroe, --- F. Supp. 3d ---, 2025 WL 941310, at *4. In contrast, and as noted, the letter outlining the terms of employment here made specific note of the arbitration clause.

In sum, the factors articulated in Chen-Oster do not favor the enjoinment of clauses 5-10 of the employment agreements.[4]

Plaintiff also makes arguments founded in North Carolina contract law, which in some cases merge with his other contentions.

North Carolina law permits voiding of a contract when a unilateral mistake is accompanied by fraud, imposition, undue influence, or like oppressive circumstances. See Marriott Fin. Servs., Inc. v. Capitol Funds, Inc., 288 N.C. 122, 136 (1975). Plaintiff argues that a unilateral mistake occurred here which, combined with the purportedly abusive circumstances recounted and rejected

---

[4] The parties make no independent argument on the fourth factor, and instead largely fold this point into their discussions of the other factors.

8

elsewhere in this order, render the employment agreements void. The court need not assess whether a mistake occurred here, because it has rejected the oppressive circumstances arguments plaintiff presents, and which are required to void a contract based on mistake. Id.

In the alternative, plaintiff argues that defendant imposed the agreements through fraud. The court disagrees.

The elements of fraud under North Carolina law are 1) false representation or concealment of a material fact; reasonably calculated and made with intent to deceive; 3) which does in fact deceive; 4) resulting in damages. Ragsdale v. Kennedy, 286 N.C. 130, 138 (1974).

Plaintiff's fraud argument fails on the second element. Defendant presents unrebutted evidence that the employment agreements were the product of a corporate restructuring, and so not of an intent to deceive. (Townsley Enjoin Decl. ¶ 2). Plaintiff argues against this point, again, not based on his own evidence, but rather through speculation. This cannot overcome defendant's thus-unrebutted evidence.

In sum, the enjoinment of clause 5-10 of putative class members' employment agreements is not appropriate.

2. Corrective Notice and Communications Limitations

This conclusion determines the resolution of plaintiff's other requests for relief. Plaintiff requests that the court approve corrective notice to all putative class members which includes, in part, a declaration that the arbitration agreements are unenforceable. (Proposed Corrective Notice (DE 12-1) 4). Because the court has concluded to the contrary, and because plaintiff has not moved to certify a class, so it is unclear to whom such notice should be sent, this request is denied. Similarly, in the absence of any evidence of coercion, limitations on communications between defendant and putative class members are not proper.

9

Case 5:25-cv-00203-FL    Document 30    Filed 08/18/25    Page 9 of 16

C. Motion to Compel Arbitration

Defendant moves to compel plaintiff to arbitrate his claims against it and to stay his claims during the arbitration, or in the alternative to dismiss his claims on grounds of collateral estoppel. The court, having concluded above, and again below, that the employment agreement was the product of neither fraud nor coercion, agrees that arbitration must be compelled and so does not reach defendant's alternative argument.

Section 3 of the Federal Arbitration Act ("FAA") provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. Section 4 authorizes a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition [a] United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Section 4 provides that, when presented with such a motion, a court "shall hear the parties, and upon being satisfied that the making of the agreement for arbitration . . . is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." Id.

In reviewing a motion to compel arbitration, the "court accepts as true the allegations in the complaint that relate to the underlying dispute between the parties." Berkeley Cty. Sch. Dist. v. Hub Int'l Ltd., 944 F.3d 225, 233 (4th Cir. 2019) (quotations omitted). If, however, the "'making of the arbitration agreement be in issue,' then 'the court shall proceed summarily to the trial thereof.'" Id. (quoting 9 U.S.C. § 4). The court is obliged to conduct a trial only "when a party unequivocally denies 'that an arbitration agreement exists,' and 'show[s] sufficient facts in

10

support thereof," under a summary judgment standard. Id. (quoting Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc., 807 F.3d 553, 564 (4th Cir. 2015)).

When faced with a motion to compel arbitration, the court analyzes only two "gateway matter[s]." Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2006). First, the court must determine whether "a valid agreement to arbitrate exists between the parties." Hooters of Am., Inc. v. Phillips, 173 F.3d 933, 938 (4th Cir. 1999). Second, where the court concludes there is such an agreement, the court next asks whether "the specific dispute falls within the substantive scope of that agreement." Id.

1. Existence of a Valid Arbitration Agreement

The parties first dispute whether a valid and enforceable arbitration agreement exists. The court determines this question in the affirmative.

As a threshold matter, defendant argues preemptively against any contention from plaintiff that he did not sign the arbitration agreement. (See Arb. Br. (DE 20) 1–2, 12–13). However, plaintiff presents no such argument, and instead argues only that the agreement is the unconscionable result of coercion by defendant. The court therefore need not pass on whether plaintiff signed the agreement, because defendant presents thus-unrebutted evidence and argument on this point. (See Townsley Decl. (DE 20-1) ¶¶ 2–3); id. Ex. 1 (DE 20-1) 9; id. Ex. 2 (DE 20-1) 13–15).

The court therefore turns to the substance of the parties' disagreements concerning improper communications and unconscionability, having already concluded above that the agreement was not the product of coercion, mistake, or fraud so as to make corrective action under Federal Rule of Civil Procedure 23(d) appropriate.

11

An arbitration agreement executed during the pendency of a class action lawsuit can be rendered unenforceable if it is the result of improper communications from the defendant. Crazy Horse, 880 F.3d at 144. District courts must ensure that potential plaintiffs are not misled about the consequences of joining a class in an ongoing employment dispute. See id.; see also Gulf Oil Co. v. Bernard, 452 U.S. 89, 100–01 (1981). Accordingly, plaintiff contends that the arbitration agreement here was an improper mid-suit imposition designed to deter plaintiff from pursuing the instant action.

The court disagrees. First, it cannot be disputed that the date of the arbitration agreement, January 10, 2023, is before the filing of the instant action on April 17, 2025. Plaintiff provides no authority applying Crazy Horse and related cases concerning communications during a class action to a related but separate class action that preceded the pertinent suit. Indeed, some of the cases plaintiff cites expressly disclaim the intent to apply their rulings to future suits. See Salazar, 532 F. Supp. 3d at 839; In re Currency Conversion Fee Antitrust Litig., 361 F. Supp. 3d 237, 258 (S.D.N.Y. 2005). This is reason enough to rule against plaintiff on this issue.

However, even if plaintiff's status as putative class member in the Canales action at the time the arbitration agreement was executed brought this case within the rule of Crazy Horse, plaintiff's position lacks merit.

Plaintiff presents no evidence of any actual coercion or deception such as what occurred in Crazy Horse. Instead, plaintiff's positions in this motion, and in plaintiff's other motion discussed above, rest almost entirely on pure speculation about what might have been said to plaintiff at the town hall meeting at which the arbitration agreement, itself part of a much larger new employment agreement produced as part of a corporate restructuring, was discussed, and who might have attended. Thus, plaintiff essentially faults defendant for failing to prove a series of negatives. But

the court applies the summary judgment standard to resolving whether an enforceable arbitration agreement exists, and a party cannot create a dispute of material fact through speculation. E.g., Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003). Plaintiff presents no evidence that any of the misconduct present in the cases he cites occurred here. For example, in Crazy Horse, the defendant executed and invoked the arbitration agreements in bad faith after much substantive litigation, and the agreements contained a veiled threat, based on an incorrect statement of law, that the putative class members would suffer negative economic consequences if they joined the class action. See Crazy Horse, 880 F.3d at 143–44.

Plaintiff presents no evidence or non-speculative argument that any such coercive or bad faith acts occurred here. His sole evidentiary argument is the mere fact that the agreement was presented to plaintiff after the first action was filed. (See Pl's Arb. Br. (DE 28) 17–19). Though plaintiff accurately cites cases voicing a general suspicion towards post-filing arbitration agreements, (id. at 14–16), no binding case announces a per se rule against such agreements, and plaintiff otherwise provides no basis on which the court could conclude that the arbitration agreement here was infected by coercive communications. Cf. Crazy Horse, 880 F.3d at 143–44.

Nor is the arbitration agreement unconscionable.

Unconscionability is an affirmative defense, so plaintiff bears the burden. Tillman v. Commercial Credit Loans, Inc., 362 N.C. 93, 102 (2008).[5] A party asserting the defense must prove both procedural and substantive unconscionability. Id. Procedural unconscionability involves bargaining misconduct such as unfair surprise, lack of meaningful choice, and inequality

---

[5] The parties correctly agree that North Carolina law governs unconscionability. (See Def's Arb. Br. (DE 20) 14; Pls' Arb. Br. at 12); Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 630–31 (2009) (holding that the Federal Arbitration Act incorporates the contract formation and enforceability doctrines of the underlying state).

13

of bargaining power. Id. at 102–03. Substantive unconscionability refers to "harsh, one-sided, and oppressive contract terms." Id. at 103.

Plaintiff's procedural unconscionability arguments largely mirror his improper communications points addressed above. (See Pl's Arb. Br. at 19–20). As before, the court concludes that the arbitration agreement was executed years before the instant suit began, and that plaintiff presents no evidence of bad faith, threats, or other underhandedness that would vitiate the arbitration agreement as the product of coercive communications. Plaintiff's primary case on this point is distinguishable. There, the employer imposed arbitration agreements on its employees who were plaintiffs in a then-pending suit, and told one plaintiff he could not return to work unless he signed the agreement. See O'Connor v. Agilant Sols., Inc., 444 F. Supp. 3d 593, 598–99 (S.D.N.Y. 2020). And as with their communications points above, plaintiff presents no evidentiary basis for any oppressive bargaining beyond speculation about defendant's nefarious intent, and the lone fact that the arbitration agreement did not affirmatively identify the Canales action to employees. (See Pls' Arb. Br. at 20).

Nor do plaintiff's arguments on substantive unconscionability carry the day. Plaintiff's sole argument on this score is that the arbitration agreement lacks an opt-out provision. Even assuming this would indeed make the agreement substantively unconscionable, the agreement does in fact contain an opt-out provision. (Townsley Decl. Ex. 2 at 15). Plaintiff contends that this opt-out clause is illusory because no employee has ever exercised it, and because it is contradicted by Hernandez's offer letter. The former point is unpersuasive, as plaintiff offers no evidence or argument that the company has deterred the exercise of opt-out rights through any improper means. And the latter point is not supported by the offer letter. The offer letter required plaintiff to execute the employment agreement, which included both the arbitration agreement and the opt-out clause.

14

(Id. Ex. 1 at 8; id. Ex 2 at 15). The offer letter simply does not state that employment was conditioned on refraining from exercising opt-out rights.

In sum, plaintiff does not demonstrate either procedural or substantive unconscionability. His arguments against enforceability fail.

2. Scope of the Agreement

Finally, the court turns to whether the instant claims fall within the scope of the arbitration agreement. They do.

The agreement commits to arbitration "all disputes that may arise out of or be related in any way to [plaintiff's] employment, including but not limited to the termination of [his] employment and [his] compensation," and it specifically encompasses claims under the FLSA and the NCWHA. (Id. Ex. 2 at 13). Plaintiff makes no argument contesting the agreement's scope. (See generally Pl's Arb. Br.).

In sum, the court concludes that the arbitration agreement is enforceable and plaintiff's claims fall within its scope. As such, defendant's motion to compel arbitration and to stay his claims in this case during the pendency of arbitration proceedings is granted.

## CONCLUSION

Based on the foregoing, plaintiff's motion for tolling (DE 8) is GRANTED. Plaintiff's motion to enjoin employment agreements and for a protective order (DE 11) is DENIED. Defendant's motion to compel arbitration (DE 19) is GRANTED. The court STAYS claims pending such arbitration. The parties are DIRECTED to file a status report regarding the status of arbitration within 90 days of the date of this order, and every 90 days thereafter, or upon conclusion of arbitration, whichever is earlier.

SO ORDERED, this the 18th day of August, 2025.

                                                  _____
                                                  LOUISE W. FLANAGAN
                                                  United States District Judge